# NO. 23-2785

In The

# United States Court Of Appeals

## For The Third Circuit

**JOHN LIGHT, Individually and on behalf of all others similarly situated,**

*Appellant,*

**v.**

**THE HONORABLE COLLEEN C. DAVIS, State Treasurer of the State of Delaware; BRENDA MAYRACK, Esq., State Escheator and Director; Office of Unclaimed Property.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
CASE NO. 1-22-CV-00611 - CHRISTOPHER J. BURKE, U.S. DISTRICT JUDGE

———————————————

## BRIEF OF APPELLANT

———————————————

**Mark C. Rifkin**
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
**270 Madison Avenue**
**9th Floor**
**New York, NY  10016**
**(212) 545-4600**

**Theodore A. Kittila**
**James G. McMillan, III**
HALLORAN FARKAS
  + KITTILA LLP
**5801 Kennett Pike**
**Suite C/D**
**Wilmington, DE  19807**
**(302) 257-2025**

**Arthur Susman**
LAW OFFICE
  OF ARTHUR SUSMAN
**1540 N. Lake Shore Drive**
**Chicago, IL  60610**
**(847) 800-2351**

*Counsel for Appellant*       *Counsel for Appellant*       *Counsel for Appellant*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................... iii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ......................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ............................2

STATEMENT OF THE CASE............................................................2

    STATEMENT OF FACTS ..........................................................2

        A.    Delaware's Unclaimed Property Act ...........................3

        B.    The Takings Clause and Delaware Constitution Art. I, § 8........4

        C.    Delaware's Violation of Light's Rights......................5

    PROCEDURAL BACKGROUND ...................................................8

    RULINGS PRESENTED FOR REVIEW...........................................8

SUMMARY OF ARGUMENT .........................................................9

ARGUMENT .............................................................................10

    I.    THE DISTRICT COURT ERRED BY FINDING THAT LIGHT
        DID NOT HAVE STANDING TO BRING THESE CLAIMS ........10

    STANDARD OF REVIEW ........................................................10

    DISCUSSION .......................................................................10

        A.    The District Court Improperly Considered Factual
            Matters Outside the Complaint and Failed to
            Construe the Complaint in the Light Most
            Favorable to Appellant..................................11

        B.    Light Satisfies the Standing Requirement of Article
            III .......................................................16

C.   Light's Claims are Ripe ................................................... 17

II.   THE DISTRICT COURT ERRED BY FINDING THAT LIGHT HAD NOT STATED PLAUSIBLE CLAIMS FOR JUST COMPENSATION FOR THE STATE'S USE OF HIS PROPERTY FOR PUBLIC PURPOSES ........................................... 23

STANDARD OF REVIEW ................................................. 23

DISCUSSION ...................................................... 24

A.   A Taking Occurs Whenever Private Property is Taken for Public Use ................................................ 24

B.   The Takings Clause Does Not Require Any Diligence by Property Owners ...................................... 26

C.   Just Compensation Must be Paid Even if the Taking is Temporary ................................................ 34

CONCLUSION ......................................................... 39

STATEMENT REGARDING ORAL ARGUMENT ........................................... 39

COMBINED CERTIFICATIONS .......................................... 40

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Bagot v. Ashcroft*,
    398 F.3d 252 (3d Cir. 2005) ..........................................................................33

*Ballentine v. United States*,
    486 F.3d 806 (3d Cir. 2007) ..........................................................................12

*Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*,
    877 F.3d 136 (3d Cir. 2017) ..........................................................................33

*Brown v. Legal Found. of Washington*,
    538 U.S. 216 (2003) ..........................................................................29, 36, 37

*Cedar Point Nursery v. Hassid*,
    141 S. Ct. 2063 (2021) ..................................................................................35

*Chi. Burlington & Quincy R.R. Co. v. City of Chi.*,
    166 U.S. 226 (1897) ......................................................................................24

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ........................................................................................11

*Const. Party of Pennsylvania v. Aichele*,
    757 F.3d 347 (3d Cir. 2014) ..........................................................12, 13, 16

*Delmarsh, LLC v. Env't Appeals Bd.*,
    277 A.3d 281 (Del. 2022) ..........................................................................9, 26

*First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles*,
    482 U.S. 304 (1987) ......................................................................................30

*Friends of the Earth, Inc. v. Laidlaw Env'l Serv. (TOC), Inc.*,
    528 U.S. 167 (2000) ......................................................................................11

*Goldberg v. Frerichs*,
    912 F.3d 1009 (7th Cir. 2019) ................................................................37, 38

*Gotha v. United States*,
    115 F.3d 176 (3d Cir. 1997) ..........................................................................14

*Gould Elecs. Inc. v. United States*,
 220 F.3d 169 (3d Cir. 2000)........................................................13, 14

*Hassen v. Gov't of Virgin Islands*,
 861 F.3d 108 (3d Cir. 2017)...............................................................35

*Kolton v. Frerichs*,
 869 F.3d 532 (7th Cir. 2017)..........................................................22, 37

*Knick v. Twp. of Scott, Pennsylvania*,
 139 S. Ct. 2162 (2019)........................................................................18

*Loretto v. Teleprompter Manhattan CATV Corp.*,
 458 U.S. 419 (1982)......................................................................30, 35

*Lum v. Bank of America*,
 361 F.3d 217 (3d Cir. 2004)...............................................................23

*McCarthy v. Recordex Serv., Inc.*,
 80 F.3d 842 (3d Cir. 1996)..................................................................10

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007)............................................................................21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jordan*,
 2017 U.S. Dist. LEXIS 63749 (D. Del. Apr. 27, 2017)......................11

*Mod Stack LLC v. Aculab*,
 2019 U.S. Dist. LEXIS 129145 (D. Del. Aug. 2, 2019)......................20

*Monongahela Navigation Co. v. U.S.*,
 148 U.S. 312 (1893)............................................................................30

*Mortensen v. First Fed. Sav. & Loan Ass'n*,
 549 F.2d 884 (3d Cir. 1977) ...............................................................12

*Murr v. Wisconsin*,
 582 U.S. 383 (2017)........................................................................9, 26

*NE Hub Partners, L.P. v. CNG Transmission Corp.*,
 239 F.3d 333 (3d Cir. 2001)...........................................................17, 20

*Nichols v. City of Rehoboth Beach*,
2015 U.S. Dist. LEXIS 166775 (D. Del. Dec. 14, 2015),
*aff'd*, 836 F.3d 275 (3d Cir. 2016) ................................................................. 11

*Peachlum v. City of York*,
333 F.3d 429 (3d Cir. 2003) ........................................................................... 19

*Phillips v. Washington Legal Found.*,
524 U.S. 156 (1998) ................................................................... 29-30, 36, 37

*Plains All Am. Pipeline L.P. v. Cook*,
866 F.3d 534 (3d Cir. 2017) ............................................................. 19, 21, 22

*Presbytery of Orthodox Presbyterian Church v. Florio*,
40 F.3d 1454 (3d Cir. 1994) ........................................................................... 22

*Reilly v. Ceridan Corp.*,
664 F.3d 38 (3d Cir. 2011) ............................................................................. 11

*In re Schering Plough Corp. Intron*,
678 F.3d 235 (3d Cir. 2012) .................................................................... 12, 13

*Simon v. Weissmann*,
301 F. App'x. 107 (3d Cir. 2008) ............................................................ *passim*

*Smolow v. Hafer*,
959 A.2d 298 (Pa. 2008) ................................................................................ 33

*Sogg v. Zurz*,
905 N.E.2d 187 (Ohio 2009) .......................................................................... 38

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......................................................................... 19, 20, 21

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*,
535 U.S. 302 (2002) ....................................................................................... 26

*Texaco, Inc. v. Short*,
454 U.S. 516 (1982) ....................................................................... 10, 26, 27, 34

*Warren v. New Castle Cty.*,
2008 U.S. Dist. LEXIS 49051 (D. Del. June 26, 2008) ................................ 17

*Warren Gen. Hosp. v. Amgen Inc.*,
　643 F.3d 77 (3d Cir. 2011) ....................................................................10, 23

*Washington Legal Foundation v. Tex. Equal Access to Justice Found.*,
　270 F.3d 180 (5th Cir. 2001), *cert. granted, judgment vacated sub nom.*
　*Phillips v. Washington Legal Foundation*,
　　538 U.S. 942 (2003) ..........................................................................30

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*,
　449 U.S. 155 (1980)..........................................................................36, 37

*Williamson Cty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*,
　473 U.S. 172 (1985)................................................................................29

*United States v. 355.70 Acres of Land*,
　327 F.2d 630 (3d Cir. 1964)...........................................................*passim*

*United States v. Abreu*,
　32 F.4th 271 (3d Cir. 2022) ...............................................................31, 32

*United States v. Dow*,
　357 U.S. 17 (1958)..........................................................................18, 35

*United States v. Dupree*,
　617 F.3d 724 (3d Cir. 2010) .....................................................................32

*United States v. General Motors Corp.*,
　323 U.S. 373 (1945)..................................................................................36

*United States v. Joseph*,
　730 F.3d 336 (3d Cir. 2013)......................................................................32

## **Constitutions**

Art. III, U.S. Constitution .........................................................................16, 17, 19

Amend. V, U.S. Constitution.....................................................................*passim*

Amend. XIV, U.S. Constitution .................................................................*passim*

Art. I, § 8, Delaware Constitution of 1897 (as amended)................................*passim*

Art. I, § 19, Ohio Constitution ..................................................................38

## Statutes

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. §§ 1331 ...............................................................................1

28 U.S.C. § 1343 .................................................................................1

28 U.S.C. § 1367 .................................................................................1

28 U.S.C. § 2201 .................................................................................1

42 U.S.C. § 1983 .................................................................................1

12 *Del. C.* §§ 1130 ....................................................................*passim*

12 *Del. C.* § 1133 ...........................................................................5, 6

12 *Del. C.* § 1142-44 .........................................................................3

12 *Del. C.* § 1148-1150 .....................................................................3

12 *Del. C.* § 1154 ....................................................................*passim*

12 *Del. C.* § 1160 ..............................................................................7

12 *Del. C.* § 1165-1170 .....................................................................3

12 *Del. C.* §§ 1163 ..................................................................*passim*

29 *Del. C.* § 6102 ............................................................................28

765 ILCS 1025/15 ........................................................................22, 37

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) over the claims filed by Appellant John Light ("Light") challenging the State of Delaware's Abandoned and Unclaimed Property Law, Del. Code Ann. tit. 12, § 1130, *et seq.* (the "Act"), under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for a declaratory judgment under 28 U.S.C. § 2201, *et seq.* JA40-41. The District Court had supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Light's claim under Art. I, § 8 of the Delaware Constitution of 1897 (as amended). JA41. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to hear this appeal from the final decision of the District Court dismissing Light's claims in their entirety. No other claims between the parties remain to be adjudicated.

The District Court's decision was entered on September 27, 2023. JA2; JA3-32. Light timely filed his Notice of Appeal on September 28, 2023. JA1.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Did the District Court err in concluding that Light lacks standing to challenge the constitutionality of the Act where his private property has been taken by the State and used for public purposes, but the Act deprives him of just compensation for the time his property has been in the State's possession and used for public purposes? JA13-15: D.I. 24 at pp. 9-11.

2.     Did the District Court err in concluding that Light's claims are not ripe because his private property has been taken by the State and he is sure to be deprived just compensation for the time the property has been in the State's possession and used for public purposes?  JA10-23; D.I. 24 at pp. 11-15.

3.     Did the District Court err in concluding that the Complaint fails to state a claim upon which relief can be granted where Light's private property has been taken by the State and used for public purposes, but the Act deprives him of just compensation for the time his property has been in the State's possession and used for public purposes?  JA23-32; D.I. 24 at pp. 15-24.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously, and Appellants are not aware of any other cases in any court or agency relating to actions at issue in this case.

## STATEMENT OF THE CASE

### STATEMENT OF FACTS

John Light, a long-time Delaware resident and the owner of unclaimed property currently held by the State of Delaware, commenced this class action against Appellees Colleen C. Davis, State Treasurer of the State of Delaware ("Davis"), and Brenda Mayrack, State Escheator and Director, Office of Unclaimed Property ("Mayrack"), challenging the constitutionality of the Act under the Fifth

and Fourteenth Amendments to the United States Constitution and under Art. I, Sec. 8 of the Constitution of the State of Delaware.  JA38.

## A.    Delaware's Unclaimed Property Act.

The Act serves two equally important functions.  *First*, it provides a detailed mechanism for the owners of unclaimed property to be reunited with their property.  *See* 12 *Del. C.* §§ 1142-1144, 1148-1150, and 1165-1170).  *Second*, the Act permits (indeed, requires) the State of Delaware to use unclaimed property for public purposes until the owners of the property reclaim it.  *See* 12 *Del. C.* §§ 1163(a) ("State Escheator shall deposit into the General Fund all moneys or proceeds of property received under this chapter").

Section 1154 of the Act, 12 *Del. C.* § 1154, *prohibits* the payment of interest or any other just compensation to the owners of unclaimed property.  Under the express provisions of the Act, when the property is returned to Light, there is no dispute that Light will not recover just compensation for the time his property has been in the State's possession.[1]  The Act effectively provides the State with an interest-free loan of unclaimed private property funds that it directs to be

---

[1] Light does not claim he is entitled to the interest or other profit that the State may have earned on his property.  Rather, he claims that by prohibiting the State from paying interest for the use of his property, the Act deprives Light of his constitutional right to just compensation.  If the State, for example, lost money on its investment of Light's unclaimed property, the Takings Clause of and Art. I, § 8 of the Delaware Constitution still would still require the State to pay just compensation for its public use of his private property.

commingled with the State's General Fund and used for public purposes while in the Treasurer's custody, without providing any just compensation to property owners for the State's use of those private property funds while in the Treasurer's custody.

**B.      The Takings Clause and Delaware Constitution Art. I, § 8.**

The Takings Clause of the Fifth Amendment of the United States Constitution prohibits the government from taking or using private property for public use without just compensation to the property owner.   Likewise, Art. I, § 8 of the Delaware Constitution also prohibits the State from taking a person's property or applying it to public use without his consent and without just compensation being made.  In this context, just compensation means the full monetary equivalent of the property taken from its owner or another who is entitled to the property, including the use of that property by the State for public purposes.  *See United States v. 355.70 Acres of Land*, 327 F.2d 630, 632 (3d Cir. 1964) ("just compensation "must include … an award for the intervening deprival" of a person's private property).

By prohibiting the payment of interest on unclaimed property while it is in the State's possession—which property ***must*** be used for public purposes—the Act automatically and irrevocably deprives the owner of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Art. I, § 8 of the Delaware Constitution.

### C.    Delaware's Violation of Light's Rights.

Light is the "owner" of certain "property," as those terms are defined in Sections 1130(17) and (19) of the Act, 12 *Del. C.* §§ 1130(17) and (19), that is "presumed abandoned" under Section 1133 of the Act, 12 *Del. C.* § 1133.  JA11 at ¶ 11.  According to Delaware's online records, the State Escheator currently holds Light's property in custody.  JA46-47 at ¶ 51.  His property consists of a claim of over $50.00 as reported to the State by Office Depot Inc.  JA47 at ¶ 51.

Under the Act, Light's property, along with all other unclaimed property, is held in custody by the Delaware State Escheator, Appellee Mayrack.  JA47 at ¶ 53. The Delaware State Treasurer, Appellee Davis, is responsible for supervising and administering the Act.  JA40 at ¶ 12. The State Treasurer also has custody of the State's General Fund, into which all unclaimed property is commingled and is used for public purposes.  *See* JA45 at ¶ 40; 12 *Del. C.* § 1163.  The Act is custodial in nature:  ownership of Light's property never passes to the State.

The State Escheator holds Light's property subject to his right to reclaim it. JA47 at ¶ 52. The State Escheator has used Light's unclaimed property—as it uses all other "property"—for public purposes, including by investing the property, earning interest, and otherwise using it to fund the State's operations and programs. JA47 at ¶ 53.

Under the Act, unclaimed or abandoned property refers to property held by any person who is *not* its owner, which the owner has abandoned or as to which there has been no contact with the owner for the relevant dormancy period specified in Section 1133 of the Act. *See* 12 *Del. C.* § 1133. Common types of abandoned or unclaimed property include checking and savings accounts, virtual currency, uncashed wage and payroll checks, uncashed stock dividend checks, stock certificates, insurance payments, utility deposits, customer deposits, accounts payable, credit balances, refund checks, money orders, traveler's checks, uncashed death benefit checks, unused gift cards, and life insurance proceeds. JA42 at ¶ 22. Under Section 1130(19)(a) of the Act, 12 *Del. C.* § 1130(19)(a), unclaimed or abandoned property also includes all income from or increments to the property.

Unclaimed property is "presumed abandoned" if the owner has not communicated in writing with the holder concerning the property or has not given an indication of an interest in the property within certain time limits specified in the Act. 12 *Del. C.* § 1133.[2] Property thus "presumed abandoned" must be delivered to the State Escheator's custody. *Id*.

The Act allows the State to take custody of and use the property until it is reunited with its owner and provides a mechanism to reunite owners with their

---

[2] The Act specifies the various dormancy periods after which different kinds of unclaimed property are presumed abandoned. *See* 12 *Del. C.* §§ 1133-1135.

unclaimed property. JA41 at ¶ 20. While in the State's possession, unclaimed property is commingled with the State's General Fund while in the Treasurer's custody. JA45 at ¶ 40. The property and the proceeds therefrom are used for public purposes until the property or proceeds are recovered by the rightful owner or person entitled thereto. JA45 at ¶ 41 (citing 12 *Del. C.* § 1163).

With few exceptions, none of which applies here, the owners of unclaimed property are not permitted any just compensation for the State's use of those private property funds while in the Treasurer's custody. Section 1154 of the Act, 12 *Del. C.* § 1154, *expressly prohibits* the payment of interest on abandoned property as soon as it is reported to the State Escheator and *expressly divests* the owner or any other person entitled to recover unclaimed property of any right to receive interest on the property. JA44 at ¶ 38.[3] The Act effectively provides the State Escheator, the State Treasurer, and the State of Delaware with an interest-free loan of unclaimed private property funds that the Act requires to be commingled with the State's General Fund while in the Treasurer's custody, without providing any just compensation to

---

[3] Under Section 1160 of the Act, 12 *Del. C.* § 1160, the owner or other person entitled to recover unclaimed dividend- or interest-bearing securities *prior* to their conversion to cash is entitled to any dividends or interest that accrues up to the time the claim is paid. However, for all other unclaimed property, the Act does *not* provide for compensation to any owner for the State taking of the fruits of the abandoned property and the use of that property to fund State obligations during the period it is in the State's custody. JA44 at ¶ 39.

claiming property owners for the State's use of those private property funds while in the Treasurer's custody.  JA45 at ¶ 40.

## PROCEDURAL BACKGROUND

On May 6, 2022, Light filed his Class Action Complaint ("Complaint") challenging the constitutionality of Section 1154(a) of the Act under the Fifth and Fourteenth Amendments and under Art. I, § 8 of the Delaware Constitution.  In Count I of the Complaint, Light seeks declaratory and prospective injunctive relief on behalf of himself and all other owners of unclaimed property, alleging that the Act is unconstitutional pursuant to the Fifth and Fourteenth Amendments to the Constitution.  In Count II, Light seeks declaratory and injunctive relief, alleging that the Act is unconstitutional pursuant to Article I, Section 8 of the Delaware Constitution.  On July 1, 2022, Appellees moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  JA55.  Following full briefing, the District Court heard oral argument on April 13, 2023.  JA58.

## RULINGS PRESENTED FOR REVIEW

The District Court granted Appellees' motion to dismiss on September 27, 2023, issuing a Memorandum Opinion (JA3) and an Order (JA2) which are the subject of this appeal.  Light timely appealed on September 28, 2023.  JA1.

## SUMMARY OF ARGUMENT

The District Court erred in concluding that Light lacks standing to challenge the constitutionality of the Act.  Even though Light did not submit a claim for the return of his property, Appellees did not—and could not—substantiate their facial challenge to Light's standing because the Act affirmatively precludes him from receiving interest accrued on his unclaimed property and affirmatively deprives him of his right to receive other just compensation for the time it has been in the State's possession.  This issue was raised in the District Court at D.I. 24 at pp. 9-11 and ruled upon below at JA13-15.

The District Court likewise erred in concluding that Light's claims are not ripe because he already has been deprived interest or other just compensation on his unclaimed property and because it is beyond peradventure that the State will not pay just compensation for the time it has been in the State's possession.  This issue was raised in the District Court at D.I. 24 at pp. 11-15 and ruled upon below at JA10-23.

The District Court also erred in concluding that the Complaint fails to state a claim upon which relief can be granted because Light states a viable claim to just compensation for the temporary taking of his unclaimed property.  Settled law requires the payment of just compensation whenever private property is used for public purposes, as the Act requires.  *Murr v. Wisconsin*, 582 U.S. 383, 392 (2017); *Delmarsh, LLC v. Env't Appeals Bd.*, 277 A.3d 281, 293 (Del. 2022).  The Supreme

Court's inapposite decision in *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), and the Third Circuit's inapposite decision in *Simon v. Weissmann*, 301 F. App'x. 107 (3d Cir. 2008), do not require dismissal of Light's claims. This issue was raised in the District Court at D.I. 24 at pp. 15-24 and ruled upon below at JA23-32.

## ARGUMENT

## I.    THE DISTRICT COUR ERRED BY FINDING THAT LIGHT DID NOT HAVE STANDING TO BRING THESE CLAIMS.

### STANDARD OF REVIEW

The standard of review from the District Court's dismissal for lack of standing is plenary. *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 83 (3d Cir. 2011) (citing *McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 847 (3d Cir. 1996) (internal citation omitted)).

### DISCUSSION

The District Court dismissed Light's complaint for lack of standing. The District Court's standing decision was erroneous and should be reversed. While accepting Light's factual allegation that he owns unclaimed property which is listed on a website maintained by the Delaware Escheator, the District Court upheld Appellees' facial challenge to Light's standing after concluding there were "contingencies at play relating to Plaintiff's claims—particularly regarding whether Plaintiff will attempt to and will be able to make a sufficient evidentiary showing to demonstrate that he is a viable claimant." JA15.

Article III standing is satisfied when the plaintiff "(1) has suffered an 'injury-in-fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural of hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Nichols v. City of Rehoboth Beach*, 2015 U.S. Dist. LEXIS 166775, at *6-7 (D. Del. Dec. 14, 2015), *aff'd*, 836 F.3d 275 (3d Cir. 2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Env'l Serv. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

A party seeking prospective relief, such as an injunction, must show "an 'injury or threat of injury' that is 'real and immediate, not conjectural or hypothetical.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jordan*, 2017 U.S. Dist. LEXIS 63749, at *6 (D. Del. Apr. 27, 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983)).  Threat of injury is shown when it is "certainly impending" with a "high degree of immediacy so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Reilly v. Ceridan Corp.*, 664 F.3d 38, 42 (3d Cir. 2011) (internal citations omitted).

### A.    The District Court Improperly Considered Factual Matters Outside the Complaint and Failed to Construe the Complaint in the Light Most Favorable to Appellant.

A motion to dismiss for lack of standing is properly brought under Federal Rule of Civil Procedure 12(b)(1) "'because standing is a jurisdictional matter.'"

*Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).  A motion to dismiss for lack of ripeness under Rule 12(b)(1) may be brought either as a "facial" or a "factual" challenge. *Id.*

As the name implies, a "facial" attack asserts that the claim *as pled* is insufficient to invoke the District Court's subject matter jurisdiction, such as where the claim does not present a question of federal law, or because there is no allegation of diversity of citizenship among the parties, "or because some other jurisdictional defect is present" on the face of the complaint. *Aichele*, 757 F.3d at 358.  A "facial" attack may be made "before the moving party has filed an answer or otherwise contested the factual allegations of the complaint."  *Id.* (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 889-92 (3d Cir. 1977)).  A "factual" attack, by contrast, argues that "there is no subject matter jurisdiction because the facts of the case—and here the District Court may look beyond the pleadings to ascertain the facts—do not support the asserted jurisdiction." *Id.*

A district court must determine whether such a motion presents a facial or factual attack on the claim at issue, because that distinction determines how the pleading must be reviewed. *Aichele*, 757 F.3d at 357 (citing *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012) (internal citation omitted)).  The District Court appears to have treated Appellees' argument as making a "facial"

attack, accepting, for example, Light's factual allegation that he owns unclaimed property in Delaware's possession.  JA14 ("Because Defendants did not present any competing evidence on this score *nor as to any other relevant allegation*, in the Court's view, Defendants' ripeness challenge has to be considered a facial challenge.") (emphasis added).  But the District Court also appears to have conducted its own independent investigation of Light's factual allegation *after* the hearing on Appellees' motion to dismiss:

> Moreover, if one goes to the State Online Record (which is referenced in the Complaint), (*id*.), one can see that there is indeed an amount of over $50 relating to Office Depot, Inc. for which the owner's name is reported to be John Light; the record also notes that this person is from Wilmington, Delaware.

JA14 ("*See Claim Unclaimed Property*, Del. Unclaimed Prop., https://unclaimedproperty.delaware.gov/app/claim-search (last visited Sept. 21, 2023)." (citing Delaware's unclaimed property website)).

In considering a facial challenge, "the court must *only* consider the allegations of the complaint and documents referenced therein and attached thereto, *in the light most favorable to the plaintiff*."  *Aichele*, 757 F.3d at 358 (citing *In re Schering Plough Corp.*, 678 F.3d at 243 (quoting *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (internal quotation marks omitted)).  Thus, as the Court explained in *Aichele*, when deciding a facial attack, the District Court was required to "apply the same standard of review it would use in considering a motion to dismiss

13

under Rule 12(b)(6), *i.e.,* construing the alleged facts in favor of the nonmoving party." *Id.* The standard of review on a facial attack "is in marked contrast to the standard of review applicable to a factual attack, in which a court may weigh and 'consider evidence outside the pleadings.'" *Id.* (quoting *Gould Elecs. Inc.,* 220 F.3d at 176 (citing *Gotha v. United States*, 115 F.3d 176, 178-79 (3d Cir. 1997)).

After properly characterizing Appellees' motion to dismiss as a *facial* challenge to jurisdiction, the District Court erred by failing to construe the factual allegations of the Complaint in the light most favorable to Light and by considering factual matters outside the Complaint. Indeed, the District Court went so far as to construe Light's factual allegations *against* him.[4] For example, to make the point that the State Escheator never returns more than the value of the unclaimed property—without just compensation—to its owner, Light alleges that, "should Plaintiff claim his property, the State Escheator will pay Plaintiff a cash payment equal to the total sum of the principal amount of the unclaimed property *but will not pay any just compensation* to Plaintiff for the State's use of that property during the period of custody." JA54 at ¶ 54. Taking Light's allegation out of context and unfairly calling it "cagey," the District Court questioned whether Light actually

---

[4] The District Court did so despite acknowledging that it "must accept Plaintiff's factual allegations—including that he is the owner of the Unclaimed Property—to be true," JA15, implicitly recognizing that Appellees made a "facial" challenge to jurisdiction.

intends to make a future claim for his property. JA18. The District Court's harsh and unwarranted criticism of Light's Complaint is hardly construing it in a light most favorable to him.

Despite acknowledging that Appellees did not present *any* competing evidence as to *any* relevant allegation in the Complaint, the District Court engaged in unsupported and improper *speculation* to conclude that it lacked jurisdiction because Light's claim was not ripe—and, in the District Court's own view—might never ripen: would Light ever attempt to reclaim his property (JA15); could he present sufficient "evidence" in that regard (*id.*); could Light "make a sufficient evidentiary showing to demonstrate that he is a viable claimant" (*id.*); "will he be able to sufficiently demonstrate his ownership rights" (*id.*); does Light have any evidence "to show that he is the person who once owned or once was entitled to this gift card" in question (JA16); does he even have evidence "showing that his name is John Light and that he lives somewhere in New Castle County, Delaware" (*id.*); and would the State Escheator "demand more evidence in order for [Light] to meet his burden (so as to confirm, for example, that [he] is not attempting to claim property that belongs to a family member or some other person with the same name)?" *Id.*

The District Court's speculation strays far outside the confines of the Complaint, casting doubt on Light's ownership of and entitlement to recover his unclaimed property. After recognizing that Appellees made a facial challenge to its

jurisdiction, the District Court looked for and held against Light the fact that he provided no evidence to answer those speculative questions. That was a mistake of law, as the District Court "must *only* consider the allegations of the complaint and documents referenced therein and attached thereto" and was required to do so "in the light most favorable to the plaintiff." *Aichele*, 757 F.3d at 358. Under *Aichele*, the District Court could not even *consider*—much less resolve—the myriad factual questions on which it based its finding of no jurisdiction.

The District Court erred despite acknowledging that Appellees failed to present *any* competing evidence as to *any* relevant allegation in the Complaint. The absence of such "competing evidence" made the District Court's venture outside the Complaint unwarranted. Making matters worse, the District Court's error deprived Light of his opportunity to address or clarify any deficiency or ambiguity in the Complaint, as was his right under Federal Rule of Civil Procedure 15(a)(1)(B) ("party may amend its pleading once as a matter of course within … 21 days after service of a motion under Rule 12(b)").

### B.   Light Satisfies the Standing Requirement of Article III.

Light easily satisfies the standing requirement here. He alleges a concrete and particularized injury-in-fact: the Act expressly denies him the right to receive anything other than the money or other property reported to the State whenever his property is returned. Plaintiff alleges the statute deprives him of his constitutional

right to just compensation under the Fifth and Fourteenth Amendments and under Art. I, § 8 of the Delaware Constitution.  JA45-46 at ¶¶ 41-50.  Under the Act, Plaintiff's injury is certain, not merely speculative, because his personal property already has been "taken" and used for public purposes, and the Act unequivocally has terminated his right to just compensation.  Plaintiff's injury surely will be redressed by a decision in his favor.  And Plaintiff's injury is unquestionably traceable to the challenged actions of the Defendants, who hold custody of Plaintiff's property, commingle it with the State's General Fund, use it for public purposes, and will return it to Plaintiff without paying interest on it.  *See*, *e.g*., JA40 at ¶ 12; JA45 at ¶ 40; and JA47 at ¶ 52.

### C.    Light's Claims are Ripe.

Appellees also argued that Light's claims on the ground that they are not ripe. The Court has subject-matter jurisdiction to hear any matter that presents a ripe case or controversy.  U.S. Const., Art. III, § 2; *Warren v. New Castle Cty.*, 2008 U.S. Dist. LEXIS 49051, *35 (D. Del. June 26, 2008).  Ripeness is a question that involves "a matter of degree whose threshold is notoriously hard to pinpoint." *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001).

Because the Act prohibits Light from receiving just compensation—or anything of value beyond the value of his unclaimed property—when his property is returned to him, his claims are now ripe.  This is because:

a property owner has a claim for a violation of the Takings Clause as soon *as a government takes his property for public use without paying for it*.  The Clause provides:  "[N]or shall private property be taken for public use, without just compensation."  It does not say:  "Nor shall private property be taken for public use, without an available procedure that will result in compensation."  If a local government takes private property without paying for it, that government has violated the Fifth Amendment—just as the Takings Clause says ….

*Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019) (emphasis added).

In *Knick*, the Supreme Court elaborated on the ripeness of a Takings claim:

We have long recognized that property owners may bring Fifth Amendment claims against the Federal Government *as soon as their property has been taken*….  And we have explained that "the act of taking" is the "event which gives rise to the claim for compensation." *United States v. Dow*, 357 U.S. 17, 22, 78 S. Ct. 1039, 2 L.Ed.2d 1109 (1958).  The Fifth Amendment right to full compensation *arises at the time of the taking*, regardless of post-taking remedies that may be available to the property owner.

139 S. Ct. at 2170 (2019) (emphasis added).

The Supreme Court's decision in *Knick* makes it abundantly clear that Light's claims for unconstitutional takings under the Fifth Amendment and Art. I, § 8 of the Delaware Constitution arose when the taking occurred.  As soon as Light's property was deposited into Delaware's General Fund and put to public use, the taking occurred (*see* II.A., *infra*).  Light was entitled to bring his constitutional claims as soon as his property was "taken," that is, as soon as it was put to public use.  Under *Knick*, Light need not have sought return of his unclaimed property, nor been denied just compensation after doing so, to have ripe constitutional claims.

Appellees relied upon *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534 (3d Cir. 2017), for their ripeness argument.    In that case, Plains challenged the constitutionality of the Act's "multistate" audit provisions.    Delaware's Audit Manager notified Plains that the State intended to audit its records for compliance with the Act.  Plains objected to the audit as unconstitutional, and the Audit Manager responded that it was legal.    Plains then commenced the action challenging Delaware's audit practices.  866 F.3d at 537-38.

In *Plains*, this Court explained that ripeness asks "whether the parties are in a 'sufficiently adversarial posture,' whether the facts of the case are 'sufficiently developed,' and whether a party is 'genuinely aggrieved.'"  *Plains*, 866 F.3d at 539 (quoting *Peachlum v. City of York*, 333 F.3d 429, 433-34 (3d Cir. 2003)).  The Court held that a "preenforcement" action is ripe for jurisdictional purposes when the plaintiff has "'alleged a *sufficiently imminent* injury for the purposes of Article III.'"  *Id.* (quoting *Susan B. Anthony List v. Driehaus* ("*SBA List*"), 573 U.S. 149, 159 (2014)) (emphasis added).  Here, Light's injury is sufficiently imminent:  when Light recovers his unclaimed property, he *will not* receive just compensation for the time it was in the State's possession.  That fact is not in dispute.

In *SBA List*, the plaintiffs challenged the constitutionality on First Amendment grounds of an Ohio statute prohibiting certain false statements during a political campaign without any enforcement action having been taken.  One of the plaintiffs

continued its action *after* the election had ended and the other plaintiff maintained its action despite *never* having disseminated any questionable election material for fear of being sued under the Ohio statute. 573 U.S. at 149. The Supreme Court found that both claims were ripe, holding that the mere "*threat* of enforcement of the false statement statute amounts to an Article III injury in fact." *Id.* at 161 (emphasis added). Plaintiff's claims are no less ripe here.

Appellees argued that Light "asks this Court to *assume* that he is the owner of" property held by the State under the Act. D.I. 17 at 11 (emphasis added). That is hardly a basis on which the Complaint may be dismissed. Citing the State's online database, Light clearly and concisely alleges he owns "property" which the State Escheator currently holds in custody under the Act. JA46-47 at ¶ 51. Indeed, the Court *must* accept the truth of that factual allegation. *See NE Hub Partners, L.P.*, 239 F.3d at 341 (Rule 12(b)(1) standards); *Mod Stack LLC v. Aculab*, 2019 U.S. Dist. LEXIS 129145, at *4 (D. Del. Aug. 2, 2019) (Rule 12(b)(6) standards). In assessing the facial challenge to jurisdiction, the District Court was required to accept Light's allegation of ownership.

Appellees also argued that Light's claim is premature because he has not yet filed a claim for the return of his property. D.I. 17 at p. 11. They argued that his claim is premised on "future events," including his submission of a claim for the return of his property and a determination of that claim resulting in an injury to him.

*Id*.  Plaintiff easily satisfies the "imminent injury" test under *Plains* and *SBA List* even though he has not yet filed a claim for a return of his property and even though his claims are based on so-called "future events."

Like the constitutional challenge to the Ohio election law at issue in *SBA List*, Light's constitutional challenge to the Act is ripe now.  As alleged in the Complaint, the express terms of Section 1152 *already* have denied Plaintiff the right to receive interest on his property:

> Notwithstanding any other provision of law, no person entitled to or owner of property shall be entitled to receive interest on account of such property from and after the date a report of such property is made to the State Escheator under this chapter, whether or not the person was entitled to interest on such property prior to such date.

12 *Del. C*. § 1154(a).  The Act deprives both Appellee of any discretion to pay interest to Light or any other person on any property held by the State under the Act.  Thus, when Light recovers only his property, it is certain he will not receive any just compensation.

The challenged provision of the Act in this case—the express denial of the property owner's right to receive interest or just compensation when his property is returned—is not like the audit provision at issue in *Plains*.[5]  The audit provision in

---

[5] In *Plains*, this Court held that a plaintiff need not "expose himself to liability before bringing suit to challenge the basis for the threat."  866 F.3d at 541 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)).  Importantly, the Court added, "'the party seeking review need not have suffered a completed harm to establish adversity'—it suffices that there is a 'substantial threat of real harm and

that case involves a degree of discretion.   866 F.3d at 543 (stating that audit is "susceptible to a wide variety of interpretations") (citation omitted).   By contrast, Section 1154 is clear and absolute:  it permits *no such discretion* and requires *no such interpretation*.

Rather, the challenged provisions of the Act in this case are like those at issue in *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017), where the plaintiff challenged the constitutionality of Illinois's escheatment law.   Like the Delaware Act, the Illinois law affirmatively denied interest to the owner of unclaimed property.   *See Kolton*, 869 F.3d at 535 (citing 765 ILCS 1025/15, which provides, "When property is paid or delivered to the State Treasurer under this Act, the owner is not entitled to receive income or other increments accruing thereafter.").   The Seventh Circuit rejected the defendants' argument that the plaintiff had to present a claim for a return of his property with interest before having standing to sue.

Given Illinois's statutory provision, which is substantially like Section 1154 of the Act, the Seventh Circuit noted that "any claim that might have been presented to the [Illinois] Treasurer or a state judge for lost interest and other income would have been *pointless*, perhaps sanctionably frivolous." *Kolton*, 869 F.3d 532 at 535

---

that the threat … remain real and immediate throughout the course of the litigation.'"
*Id*. (quoting *Presbytery of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1463 (3d Cir. 1994)).

(emphasis added).  For the same practical reason, Light's claim is ripe even though he did not first undertake the pointless (and perhaps frivolous) step of filing a claim with the State Escheator.

The State has been in possession of Light's property and has used Light's property for the public benefit.  JA46-47 at ¶¶ 51-53.  Under the statutory regime, the State will not pay just compensation to Light for the use of his property, and Appellees have no authority to do so.  12 *Del. C.* § 1154(a).  Light's property was taken for purposes of the Fifth Amendment and Art. I, § 8 of the Delaware Constitution.  By *prohibiting* the payment of just compensation to Light, the Act has inflicted injury on Light and continues to do so.  When he recovers his property, he will not—and *cannot*—be justly compensated for the State's use of his property except by bringing this action.

## II.   THE DISTRICT COURT ERRED BY FINDING THAT LIGHT HAD NOT STATED PLAUSIBLE CLAIMS FOR JUST COMPENSATION FOR THE STATE'S USE OF HIS PROPERTY FOR PUBLIC PURPOSES.

### STANDARD OF REVIEW

The standard of review from the District Court's dismissal of a complaint for failure to state a claim is plenary. *Warren Gen. Hosp.*, 643 F.3d at 83 (citing *Lum v. Bank of America,* 361 F.3d 217, 223 (3d Cir. 2004)).

## DISCUSSION

The District Court concluded that Light failed to assert a plausible constitutional challenge to the Act. The District Court's decision dismissing Light's constitutional challenge was erroneous and should be reversed.

### A.    A Taking Occurs Whenever Private Property is Taken for Public Use.

The Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. Amend. V; *see also Chi. Burlington & Quincy R.R. Co. v. City of Chi.*, 166 U.S. 226, 239 (1897) (applying the Fifth Amendment to the states under the Fourteenth Amendment). Similarly, Art. I, § 8 of the Delaware Constitution provides that no person's property shall "be taken or applied to public use … and without compensation being made."

Unclaimed property delivered to and held by the State is private property and belongs to its "Owners."[6] The Act expressly requires that once unclaimed property is delivered to the State, that *private property* shall be deposited into the Delaware General Fund, 12 *Del. C.* § 1163(a). Specifically, Section 1163(a) provides that "the State Escheator *shall* deposit into the General Fund all moneys or proceeds of

---

[6] The Act provides that the "person, or the person's legal representative when acting on behalf of the person, that has a legal, beneficial, or equitable interest in property subject to this chapter" is the "Owner" of that unclaimed property. 12 *Del. C.* § 1130(17).

property received under this chapter" (emphasis added). While in the General Fund, all unclaimed property is *used for public purposes*.[7] Thus, once unclaimed property is delivered to the State and deposited into the General Fund, a Fifth Amendment taking has occurred. That conclusion is not open for serious dispute: *once in the General Fund, the unclaimed property is used for public purposes*.

Thus, Delaware undeniably "takes" unclaimed property—the narrow issue raised and decided in *Simon v. Weissmann*, 301 F. App'x. 107 (3d Cir. 2008)— because it uses that private property for public purposes. As discussed below, the specific question addressed in *Simon*—whether there had been a taking—is not in dispute here. Under settled Fifth Amendment jurisprudence, the taking occurred when unclaimed *private property* was commingled with the Delaware General Fund and put to *public use*. Light claims that the Act deprives him of *just compensation*— not interest—on his unclaimed property while it is in Delaware's possession and put to public use. That claim was *not* made in *Simon*, and this Court's decision in *Simon* did *not* address or resolve it. Nonetheless, because it misconstrued Light's claim, the District Court mistakenly applied *Simon*.

---

[7] The Delaware General Fund is used to pay for State functions not paid for with specially appropriated funds or funds held for special purposes, such as the Delaware Higher Education Loan Program Fund.

**B.    The Takings Clause Does Not Require Any Diligence by Property Owners.**

Under the Takings Clause of the Fifth Amendment and Art. I, § 8 of the Delaware Constitution, a taking occurs *whenever* private property is put to public use. *Murr v. Wisconsin*, 582 U.S. at 392 ("plain language of the Takings Clause 'requires the payment of compensation whenever the government acquires private property for a public purpose'") (quoting *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 535 U.S. 302, 321 (2002)); *see also Delmarsh, LLC v. Env't Appeals Bd.*, 277 A.3d 281, 293 (Del. 2022) (same).  Neither the Fifth Amendment nor Art. I, § 8 of the Delaware Constitution imposes *any* condition on the duty to pay just compensation when private property is put to public use.

Citing this Court's decision in *Simon* and the Supreme Court's decision in *Texaco, Inc. v. Short*, 454 U.S. 516 (1982), the District Court mistakenly believed the State is relieved of the constitutional duty to pay just compensation if the property owner is somehow at fault for the property coming into the State's custody. *See* JA28.  In *Simon*, the plaintiff owned shares of stock in a company that were "presumed abandoned" and escheated to the Commonwealth of Pennsylvania.  301 Fed. App'x at 109.  Pennsylvania refused to pay interest to the plaintiff on the escheated stock. *Id*.  The specific question before the Court in *Simon* was "whether interest generated from abandoned property constitutes a cognizable property right under the Fifth Amendment." *Id*. at 112.  The Court held that interest earned on

abandoned property is not a cognizable property right.  *Id*. at 110.[8]  The Court then held that Pennsylvania "did not effect a taking *when it refused to pay interest* earned on the property while in the custody of the state."  *Id*. at 114 (emphasis added). *Simon* holds that interest earned by the State on unclaimed property does not belong to the property owner, a claim not made by Light.

The District Court, in its confusion, believed it was bound by this Court's decision in *Simon* decision to dismiss Light's case:  "After reviewing the Third Circuit's decision in *Simon*, and given the similarities between that case and the instant case, the Court does not see how it can or should deviate from *Simon*'s holding."  JA28.  Citing *Simon*, the District Court concluded that "the State's actions cannot rise to the level of a taking" because Light "allowed his alleged property interest to lapse in the first place."  *Id*.  As a result, the District Court then held that Light "*cannot* have a cognizable property interest in that property—or to any income that accrues as to the property—while the property is in the State's possession."  *Id*. (citing *Texaco*, 454 U.S. at 530) (state is not required "to compensate the owner for the consequences of his own neglect").  The District Court determined it "must follow *Simon* in concluding that Plaintiff does not have a cognizable property

---

[8] In *Simon*, the Court did not discuss or distinguish its prior holding in *United States v. 355.70 Acres of Land* that just compensation "must include … an award for the intervening deprival" of a person's private property.  327 F.2d at 632.  *See* Section B, *infra*.

interest *in any income* accruing from the Unclaimed Property while it was in the State's possession"—a claim Light does not make.  JA28-29 (emphasis added).

The District Court misconstrued the nature of Light's claim in this case and the narrow holding in *Simon*—which does not apply to Light's claim here.  Section 1163 of the Act requires that all unclaimed property in its possession must be deposited into the General Fund.[9]  12 *Del. C.* § 1163 ("State Escheator shall deposit into the General Fund all moneys or proceeds of property received under this chapter").  Here, there is no dispute that unclaimed personal property is private property, even after it comes into Delaware's possession.  The Act defines the person who has a legal or equitable interest in unclaimed property as the "Owner" of the property.  12 *Del. C.* § 1130(17) ("'Owner' means a person … that has a legal, beneficial, or equitable interest in property subject to this chapter.").  The owner's property rights are not terminated when Delaware acquires the unclaimed property.  Indeed, to protect the owners' rights, Section 1150 of the Act requires unclaimed property owners to be notified twice annually of their right to reclaim their unclaimed property.  12 *Del. C.* § 1150(d) (providing that in "June and December of each year, the State Escheator shall publish in a daily newspaper of this State a notice

---

[9] The Delaware General Fund includes "all moneys derived from taxes, fees, permits, licenses, fines, forfeitures or from any other sources or of other receipts of any kind or from any other source including the sale or disposition of surplus or other property of the State and of every agency thereof."  29 *Del. C.* § 6102.

that unclaimed property paid to the State Escheator is available to be claimed by the owners of the unclaimed property").

Unlike the issue addressed in *Simon*, Light does not claim that his property was taken *when Delaware refused to pay interest* earned on his property. To the contrary, Light claims that his property—like the private property of all other owners of unclaimed property—was taken when it was deposited into the Delaware State Fund and put to public use. That act—putting private property to public use—is the taking, and on this there can be no dispute. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking *without just compensation*." *Brown v. Legal Found. of Washington*, 538 U.S. 216, 235 (2003) (emphasis added) (quoting *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City,* 473 U.S. 172, 194 (1985)). The District Court confused Delaware's taking of Light's private property with the Act's statutory denial of just compensation.

The question resolved in *Simon* simply is not raised here. In his brief opposing Appellees' motion to dismiss, Light explained that *Simon* did not decide the Takings claim he has asserted here. Light noted in his opposition brief, "the Third Circuit held [in *Simon*] that *interest earned on abandoned property is not a cognizable property right* under the Fifth Amendment." D.I. 24 at p. 16 (emphasis added). Light also noted that the Third Circuit distinguished *Simon* from *Phillips v. Washington*

*Legal Foundation*, 524 U.S. 156, 172 (1998), in which the Supreme Court held that "interest income generated by funds held in IOLTA accounts is the 'private property' of the owner of the principal"— the client.  D.I. 24 at p. 16.

Light also noted in his opposition brief (*see* D.I. 24 at p. 17) that the Fifth Circuit held in *Washington Legal Foundation v. Tex. Equal Access to Justice Foundation*, 270 F.3d 180 (5th Cir. 2001), *cert. granted, judgment vacated sub nom. Phillips v. Washington Legal Foundation*, 538 U.S. 942 (2003), when a taking has occurred, just compensation is mandatory:  "once a taking is found, the question becomes what amount of, not whether, just compensation is due."  *Id*. at 189 (emphasis added) (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 437-38 (1982); *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 314 (1987); *Monongahela Navigation Co. v. U.S.*, 148 U.S. 312, 336 (1893)).

During oral argument on the motion to dismiss, in response to a question from the District Court seeking clarification of the nature of Light's claims, Light's counsel elaborated on the difference between Light's claims and the claims before this Court in *Simon*:

> What the Fifth Amendment says is … "Nor shall private property be taken for public use without just compensation."
>
> The private property that is taken here is the unclaimed property which then falls into the custody of the state escheator, and under the Delaware

unclaimed property law, it must be put into the general fund and, therefore, is given public use.

The Fifth Amendment says, "No private property shall be put to public use without just compensation." *The taking here is the taking of the unclaimed property for public use. It's not the taking of interest.*

JA152-53 (emphasis added).

The explanation given by Light's counsel in response to a question from the District Court amplified the distinction Light drew in his opposition brief between the claim at issue in *Simon* and his own claims. As Light said in his opposition brief and during argument on the motion to dismiss, and as he says here, unlike the plaintiff in *Simon*, he does not claim a property right in the interest earned on abandoned property. That argument presented below relies on the same law—the Fifth Amendment Takings Clause—applied to the same facts.

When the State put Light's unclaimed property into the General Fund, where it is used for public purposes, *a Fifth Amendment taking occurred*. As Light explained below, once properly understood, the narrow question raised and decided in *Simon*—whether the plaintiff in that case had a property right in the interest that was "taken" by the Commonwealth of Pennsylvania—is inapplicable. For that taking, as Light also explained below, the Fifth Amendment *requires* that just compensation be paid.

A party need not make the same argument *verbatim* before the district court to preserve that argument for appeal. *United States v. Abreu,* 32 F.4th 271, 275 (3d Cir. 2022). To the contrary, this Court has held that "[p]arties are free … to place

greater emphasis and more fully explain an argument on appeal than they did in the District Court … [or] even, within the bounds of reason, reframe their argument." *Id*. (quoting *United States v. Joseph*, 730 F.3d 336, 341 (3d Cir. 2013)).  And although "[t]here is a limit … on the extent to which an argument may be reframed," as "[r]evisions at some point become differences in kind," this Court has "made clear that parties have leeway to change the way they present their arguments on appeal so long as they do not "change the[ir] substance." *Id*. (quoting *Joseph*, 730 F.3d at 341 & n.5).  As the Court held in *Abreu*, "[t]he ultimate question is whether the parties "g[a]ve the District Court the opportunity to consider the argument." *Id*. (citing *United States v. Dupree*, 617 F.3d 724, 731 (3d Cir. 2010)).

Art. I, § 8 of the Delaware Constitution makes the point even more forcefully. Art. I, § 8 provides that no "person's property [may] be *taken or applied* to public use without the consent of his or her representatives, and without compensation being made."  Unlike the Fifth Amendment, which provides that private property may not be "taken for public use" without just compensation, Art. I, § 8 of the Delaware Constitution is expressed more broadly.  Art. I. § 8 prohibits *both* the taking and the application of private property for public use.  And Art. I, § 8 is expressed with the disjunctive "or," plainly meaning that applying private property to public use without just compensation is no less prohibited than taking the private property for that purpose.

In response to an argument made by Appellees in their reply brief and emphasized by Appellees' counsel during the motion to dismiss hearing,[10] Light's counsel emphasized the difference between the Fifth Amendment and Art. I, § 8 of the Delaware Constitution:

> Article I Section 8 of the Delaware Constitution is quite different from the Fifth Amendment …. Section 8 of the Delaware Constitution says, "No person's property may be taken or applied to public use. No person's property may be taken or applied to public use without the consent of his or her representatives and without compensation being made."
>
> … [T]he reason that I cite that is because I think it directly relates to the question that the owners of abandoned property or the unclaimed property have some fault to account here. And by including that phrase "or applied to public use" in the disjunctive, I think Delaware says that it's not concerned with the neglectfulness of the owners. However the property comes into the possession of the state, Article I Section 8 of the Delaware Constitution says it may not be applied to public use, as all this money unquestionably is, without compensation being made.
>
> And so I think that helps illuminate the distinction I was trying to make now between this case and Simon and also addresses the fault argument, the blameworthiness argument, the neglectfulness argument.

JA172-173.[11]

---

[10] Citing a Pennsylvania state case, Appellees relegated their "blame" argument to a footnote in their opening brief on the motion to dismiss. D.I. 17 at p. 16, n.8 (citing *Smolow v. Hafer*, 959 A.2d 298, 304 (Pa. 2008)).

[11] Even if these important constitutional issues had not been raised below, they should be considered by the Court on appeal. This Court "will reach 'a pure question of law even if not raised below where refusal to reach the issue would result in a miscarriage of justice or where the issue's resolution is of public importance.'" *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (quoting *Bagot v. Ashcroft*, 398 F.3d 252, 256 (3d Cir. 2005) (internal quotation omitted)).

Finally, *Texaco v. Short*, 454 U.S. 516 (1982), which was argued by Appellees and cited by the District Court (JA24-25), does not change this analysis.  There, the Supreme Court held that the owners of abandoned property were not owed compensation.  In that case, the Indiana Mineral Lapse Act at issue provided that "a severed mineral interest that is not used for a period of 20 years … reverts to the *current surface owner of the property*."  *Id*. at 518 (emphasis added).   *Texaco* was *not* a takings case:  *no private property was taken for public purposes*.  The mineral rights, deemed abandoned, were returned to the surface owner of the property, not to the state, and they were not used for any public purpose.  The facts of *Texaco* were, therefore, materially different than the facts of this case.  The government never took or used the mineral interest at issue.  Quite simply, *Texaco* does not involve a taking.  It has no bearing on whether Light's property was taken when it was deposited, along with all other unclaimed property, into Delaware's General Fund and used for public purposes.

### C.    Just Compensation Must be Paid Even if the Taking is Temporary.

The narrow legal question left for this Court to decide is whether Light is entitled to just compensation for the State's temporary taking of his unclaimed property during the time it is in the State's custody and deposited into the State's General Fund, where it is put to public use. The District Court did not directly consider or resolve this question.

The Fifth Amendment and Art. I, § 8 of the Delaware Constitution do not distinguish between permanent and temporary takings. It is immaterial that a taking is only temporary; just compensation is still owed. As the Supreme Court has held, the "duration of an appropriation—just like the size of an appropriation, *see Loretto* [*v. Teleprompter Manhattan CATV Corp*., 458 U.S. 419,] 436-37 [(1982]—*bears only on the amount of compensation*" that is owed to the property owner. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2074 (2021) (emphasis added) (citing *United States v. Dow*, 357 U.S. 17, 26 (1958)).

In *United States v. 355.70 Acres of Land*, 327 F.2d 630, 632 (3d Cir. 1964),[12] this Court held that just compensation "must include … an award for the intervening deprival" of a person's private property. In that case, the federal government acquired several parcels of land comprising approximately 355 acres in Morris County, New Jersey, by eminent domain. *Id*. at 631.[13] When the government takes private property by eminent domain, it must pay the owner of the property "'*immediate cash compensation* to the extent of the Government's estimate of the

---

[12] Although Light cited and discussed *355.70 Acres of Land* in his brief in opposition to Appellees' motion to dismiss, see D.I. 24, at pp. 2 & 16 n.5, it was not discussed by the District Court.

[13] *355.70 Acres of Land* was not overruled by *Simon*, which did not even cite the prior decision. Under IOP 9.1, "no subsequent panel overrules the holding in a precedential opinion of a previous panel. Court *en banc* consideration is required to do so." *355.70 Acres of Land* has not been overruled by the Court *en banc*, and Light is unaware of any contrary, intervening Supreme Court decision. *See Hassen v. Gov't of Virgin Islands*, 861 F.3d 108, 114 (3d Cir. 2017).

value of the property.'" *Id.* at 633 (emphasis added) (quoting *United States v. Miller*, 317 U.S. 369, 381 (1943)). However, the government deposited the sum of $26,675 with the court without allocating that amount among the parcels taken. *Id.* at 631. The Court held that the government's "blanket estimate and deposit covering several parcels and not attended by allocation among them [was] not an effective tender of any sum for any parcel." *Id.* at 632.

As the Court noted, in most eminent domain cases, "courts normally determine and award the fair value of the property at the time of taking. But usually the taking occurs at the beginning of the condemnation proceeding, while the award comes at the end." *355.70 Acres of Land*, 327 F.2d at 631. For the "substantial period during which the owner has neither his land nor equivalent value in money," the Court held that the owner of property must receive "in addition to fair value at the time of taking, an award for the intervening deprival." *Id.* In that case, the Court held that "the allowance of interest on the entire award from the date of taking [was] essential to provide just compensation" to the owners of the parcels. *Id.* at 633.[14]

---

[14] The Supreme Court has recognized that the Takings Clause requires just compensation even for temporary takings on several occasions. *United States v. General Motors Corp.*, 323 U.S. 373, 383 (1945) (ruling that government cannot "defeat the Fifth Amendment's mandate for just compensation" for temporary taking); *Brown*, 538 U.S. at 235 (Takings Clause protects the time value of money); *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 165 (1998) (applying general rule that "interest follows principal" in case of a temporary taking); *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 162-64 (1980) (state "may not transform private property into public property without compensation," even for the time period of a limited deprivation).

This Court's decision in *355.70 Acres of Land*, which decided the pertinent question of just compensation for a temporary taking, but which the District Court overlooked, is fully consistent with *Kolton*, another unclaimed property case. In that case, the Seventh Circuit held that Indiana's unclaimed property law, which, like Delaware's Act, provided the state with use of unclaimed property without payment of just compensation to claiming property owners, violated the Takings Clause of the Fifth Amendment. *Kolton*, 869 F.3d at 533. The Seventh Circuit held that the Indiana law—which, like Section 1154 of the Act, prohibited interest from being paid on unclaimed property—denied property owners of just compensation for the state's use of the property while in its custody. *Id.*[15]

The decision in *355.70 Acres of Land* is also fully consistent with *Goldberg v. Frerichs*, 912 F.3d 1009 (7th Cir. 2019), yet another unclaimed property case, where the Seventh Circuit again held that a state may not take custody of unclaimed property and retain any income that the property earns without paying interest to the property owner as just compensation for the taking. In *Goldberg*, a case involving an unclaimed check and the Illinois unclaimed property law,[16] the Seventh Circuit

---

[15] In reaching its decision, the Seventh Circuit relied upon Supreme Court precedent holding that "the Takings Clause protects the time value of money just as much as it does money itself." *Id.* (citing *Brown*, 538 U.S. at 235; *Phillips*, 524 U.S. at 165-72; and *Webb's Fabulous Pharmacies*, 449 U.S. at 162-65).

[16] Like Section 1154 of the Delaware Act, the Illinois unclaimed property law (prior to its amendment in 2017) did not permit interest to be paid to property owners. *See* 765 ILCS 1026/15-607.

explained that the broad legal principle requiring a state to pay just compensation to the owner for the time his or her property was in the state's possession and put to use for public purposes did *not* depend on the form of the property or whether it could appreciate in value. *See* 912 F.3d at 1011.

Likewise, *355.70 Acres of Land* is fully consistent with *Sogg v. Zurz*, 905 N.E.2d 187, 192 (Ohio 2009), where the Supreme Court of Ohio held that Ohio's unclaimed property law[17] violated Section 19, Article I, of the Ohio Constitution[18] as to interest earned on unclaimed funds.

The narrow legal question for this Court—whether Light is entitled to just compensation for the State's temporary taking of his unclaimed property during the time it is in the State's custody and deposited into the State's General Fund—is answered by this Court's decision in *355.70 Acres of Land*. This Court's decision in that case, which the District Court ignored, and the plethora of other authority all stand for the principle that a state must pay just compensation *whenever* private property is taken for public use, even if that taking is *temporary*.

---

[17] Like Section 1154 of the Delaware Act, the Ohio unclaimed property law similarly states, "Interest is not payable to claimants of unclaimed funds held by the state." Ohio R.C. 169.08(D).

[18] Like Art I, § 8 of the Delaware Constitution, Section 19, Article I, of the Ohio Constitution includes a just compensation provision: "Private property shall ever be held inviolate, but subservient to the public welfare. When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner."

## <u>CONCLUSION</u>

For all these reasons, the District Court's decision granting Appellees' motion to dismiss the Complaint was erroneous and should be reversed and this action should be remanded to the District Court for further proceedings.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellants respectfully request oral argument concerning all issues that form the subject matter of this Appeal.

Dated: November 22, 2023

**HALLORAN FARKAS + KITTILA LLP**

*/s/ Theodore A. Kittila*
Theodore A. Kittila
James G. McMillan III
5801 Kennett Pike, Suite C/D
Wilmington, Delaware 19807
Phone:  (302) 257-2025
Fax:  (302) 257-2019
Email:  tk@hfk.law / jm@hfk.law

-and-

Mark C. Rifkin
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
270 Madison Ave., 9th Floor
New York, New York  10016
Phone:  (212) 545-4600

-and-

Arthur Susman
**LAW OFFICE OF ARTHUR SUSMAN**
1540 N. Lake Shore Drive
Chicago, Illinois 60610
Phone:  (847) 800-2351

*Counsel for Appellant John Light*

## COMBINED CERTIFICATIONS

I, the undersigned, hereby certify the following:

1.      That I am a member of the Bar of the United States Court of Appeals for the Third Circuit.

2.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains <u>9,974 words</u>, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

3.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

4.      That the text of the electronic and paper versions of the foregoing brief are identical.

5.      That a virus check was performed on this brief using Avast Antivirus Software, and that no virus was indicated.

6.      That, on <u>November 22, 2023</u>, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all registered users.

Dated:  November 22, 2023

HALLORAN FARKAS + KITTILA LLP

*/s/ Theodore A. Kittila*
Theodore A. Kittila
James G. McMillan, III

*Counsel for Appellant John Light*

# NO. 23-2785

In The United States Court Of Appeals For The Third Circuit

## JOHN LIGHT, Individually and on behalf of all others similarly situated,

*Appellant,*

v.

## THE HONORABLE COLLEEN C. DAVIS, State Treasurer of the State of Delaware; BRENDA MAYRACK, Esq., State Escheator and Director; Office of Unclaimed Property.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE
CASE NO. 1-22-CV-00611 - CHRISTOPHER J. BURKE, U.S. DISTRICT JUDGE

---

### JOINT APPENDIX
### Volume I of II
### (Pages: 1 – 32)

---

**Mark C. Rifkin**
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
**270 Madison Avenue**
**9th Floor**
**New York, NY  10016**
**(212) 545-4600**

*Counsel for Appellant*

**Arthur G. Connolly, III**
CONNOLLY GALLAGHER
**1201 N Market Street**
**20th Floor**
**Wilmington, DE  19801**
**(302) 757-7300**

*Counsel for Appellees*

**Theodore A. Kittila**
**James G. McMillan, III**
HALLORAN FARKAS
  + KITTILA LLP
**5801 Kennett Pike**
**Suite C/D**
**Wilmington, DE  19807**
**(302) 257-2025**

*Counsel for Appellant*

**Arthur Susman**
LAW OFFICE
  OF ARTHUR SUSMAN
**1540 N. Lake Shore Drive**
**Chicago, IL  60610**
**(847) 800-2351**

*Counsel for Appellant*

**Lisa R. Hatfield**
**Christina M. Thompson**
**Max B. Walton**
CONNOLLY GALLAGHER
**267 East Main Street**
**Newark, DE  19711**
**(302) 757-7300**

*Counsel for Appellees*

<u>**TABLE OF CONTENTS**</u>
**Joint Appendix - Volume I of II**

**Page:**

**Notice of Appeal**
 filed September 28, 2023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Order**
 filed September 27, 2023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**Memorandum Opinion**
 filed September 27, 2023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

# TABLE OF CONTENTS
## Joint Appendix - Volume II of II

**Page:**

Docket Entries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

**Class Action Complaint**
    filed May 6, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**Notice of Consent**
    filed June 29, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

**Defendants' Motion to Dismiss**
    filed June 30, 2022. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

**Transcript of Motion to Dismiss Before**
**The Honorable Christopher J. Burke, U.S.M.J.**
    on April 13, 2023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

**Defendants' Notice of Subsequent Authority,**
**With Exhibit,**
    filed September 19, 2023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 204

    **Exhibit:**

    A.    Order of Dismissal
            dated September 5, 2023. . . . . . . . . . . . . . . . . . . . . . . . . . 206

**CERTIFICATE OF FILING AND SERVICE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN LIGHT, Individually and on Behalf of All Others Similarly Situated, <br><br> *Plaintiff*, <br><br> v. <br><br> THE HONORABLE COLLEEN C. DAVIS, State Treasurer of the State of Delaware, and BRENDA MAYRACK, ESQ., State Escheator and Director, Office of Unclaimed Property, <br><br> *Defendants*. | C.A. No. 1:22-cv-00611-CJB |

## NOTICE OF APPEAL

PLEASE TAKE NOTICE that John Light, Plaintiff in the above-captioned case, hereby appeals to the United States Court of Appeals for the Third Circuit from the Memorandum Opinion (D.I. 38) entered by the Court on September 27, 2023, and corresponding Order (D.I. 39), also entered by the Court on September 27, 2023, granting the Motion to Dismiss (D.I. 16) with prejudice filed by Defendants The Honorable Colleen C. Davis and Brenda Mayrack, Esq.

Dated: September 28, 2023

**HALLORAN FARKAS + KITTILA LLP**

*/s/ Theodore A. Kittila*
Theodore A. Kittila (#3963)
James G. McMillan, III (#3979)
5801 Kennett Pike, Suite C/D
Wilmington, DE 19807
Phone: (302) 257-2025
Email: tk@hfk.law / jm@hfk.law

*Attorneys for Plaintiff John Light*

**-1-**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN LIGHT, Individually and on Behalf of All Others Similarly Situated, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 22-611-CJB |
| THE HONORABLE COLLEEN C. DAVIS, ) State Treasurer of the State of Delaware, ) and BRENDA MAYRACK, ESQ., State ) Escheator and Director, Office of ) Unclaimed Property, ) ) | |
| Defendants. ) | |

### <u>ORDER</u>

At Wilmington, Delaware this **27th day of September, 2023**:

For the reasons stated in the Memorandum Order issued this same date, IT IS HEREBY

ORDERED that Defendants' motion to dismiss, (D.I. 16), is GRANTED with prejudice.  The

Clerk of Court is directed to close this case.


*Christopher J. Burke*
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

**-2-**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

JOHN LIGHT, Individually and on Behalf )
of All Others Similarly Situated, )
                                )
           Plaintiff, )
                                )
      v.                             )       Civil Action No. 22-611-CJB
                                )
THE HONORABLE COLLEEN C. DAVIS, )
State Treasurer of the State of Delaware, )
and BRENDA MAYRACK, ESQ., State )
Escheator and Director, Office of )
Unclaimed Property, )
                                )
           Defendants. )

---

James G. McMillan, III, William E. Green, Jr., HALLORAN FARKAS + KITTILA LLP, Wilmington, DE; Mark C. Rifkin, Benjamin Y. Kaufman, FREEMAN & HERZ LLP, New York, NY; Arthur Susman, LAW OFFICE OF ARTHUR SUSMAN, Chicago, IL, Attorneys for Plaintiff.

Arthur G. Connolly, Max B. Walton, Christina M. Thompson, Lisa R. Hatfield, CONNOLLY GALLAGHER LLP, Wilmington, DE, Attorneys for Defendants.

---

<u>**MEMORANDUM OPINION**</u>

Dated:  September 27, 2023
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

This case arises from a challenge to the constitutionality of Section 1154(a) of

Delaware's Abandoned and Unclaimed Property Law, Del. Code Ann. tit. 12, § 1130 *et seq.*

("DUPL").  John Light ("Plaintiff" or "Light"), a Delaware citizen and purported owner of

unclaimed property, alleges that Section 1154(a), which precludes owners of unclaimed property

from receiving interest earned on the property while it is in Delaware's possession, violates the

Fifth and Fourteenth Amendments to the United States Constitution ("Constitution"), as well as

Article I, Section 8 of the Constitution of the State of Delaware ("Delaware Constitution").  (D.I.

1 at ¶¶ 65, 70)  Before the Court is a motion filed by the Honorable Colleen C. Davis,

Delaware's State Treasurer ("State Treasurer"), and Brenda Mayrack, Esq., Delaware's State

Escheator and the Director of the Office of Unclaimed Property ("State Escheator" and together

with the State Treasurer, "Defendants"), by which Defendants seek to dismiss the operative

Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion").  (D.I.

16)  For the reasons that follow, the Court GRANTS Defendants' Motion.

I.      **BACKGROUND**

        A.      **Procedural Background**

        On May 6, 2022, Plaintiff, individually and on behalf of an alleged class of others

similarly situated, filed his Complaint against Defendants, in their official capacities for the state

of Delaware ("State").  (D.I. 1)  There are two Counts in the Complaint.  In Count I, Plaintiff

brings a claim for declaratory and prospective injunctive relief on behalf of a class,[1] alleging that

the DUPL is unconstitutional pursuant to the Fifth and Fourteenth Amendments to the

---

[1]      The class is said to be all persons or entities who are owners of unclaimed
property currently held in custody by the State Escheator or who recovered unclaimed property
pursuant to the DUPL from the State Escheator at any time since May 1, 2016.  (D.I. 1 at ¶ 55)

2

Constitution. (*Id.* at ¶¶ 64-68) And in Count II, Plaintiff brings a claim for declaratory and injunctive relief on behalf of the class, alleging that the DUPL is unconstitutional pursuant to Article I, Section 8 of the Delaware Constitution. (*Id.* at ¶¶ 69-73) On June 29, 2022, the parties consented to have the Court conduct all proceedings in the case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 15)

The Motion was filed on June 30, 2022, and briefing on the Motion was completed on August 3, 2022. (D.I. 26) The Court heard oral argument on the Motion on April 13, 2023. (D.I. 36 (hereinafter "Tr."))

### B.    Factual Background

Below, the Court will discuss certain facts relevant to the Motion. It will begin with a discussion of the relevant mechanics of the DUPL, and will then go on to address the specific facts at play in this case.

### 1.    The DUPL

Pursuant to the DUPL, property is considered abandoned if it is unclaimed by the "owner"[2] for the period of time specified in the law for each type of property. For instance, unused gift cards, other refunds or credit balances are deemed abandoned after a non-use period of five years. Del. Code Ann. tit. 12, § 1133(12) & (14). When property having certain specified connections to Delaware is presumed abandoned, the DUPL requires "holders"[3] of that property to annually report the property to the State Escheator and to remit the property to the

---

[2]    An "[o]wner" of property is defined as "a person, or the person's legal representative when acting on behalf of the person, that has a legal, beneficial, or equitable interest in property subject to this chapter." Del. Code Ann. tit. 12, § 1130(17).

[3]    A "[h]older" of property is defined as "any person having possession, custody, or control of the property of another person[.]" Del. Code Ann. tit. 12, § 1130(10).

custody of the State Escheator if certain statutory conditions are met. *Id*. §§ 1140, 1142 & 1152.

Once the property is reported and turned over to the State, the State Escheator deposits it into the

State's General Fund. *Id*. § 1163. While the abandoned property is in the State's General Fund,

the State may use it for public purposes, including by investing the property, earning interest on

the property, and otherwise using the property to fund the State's operations and programs. *Id*.;

*see also* (D.I. 1 at ¶¶ 40, 53).

The DUPL also provides a process by which individuals may attempt to reclaim their

abandoned property. Specifically, the law provides that "[a]ny person claiming an interest in any

property paid or delivered to the State Escheator under this chapter may file a claim with the

State Escheator for the property[.]" Del. Code. Ann. tit. 12, § 1165(a). To alert potential owners

of the fact that the State may be in possession of their abandoned property, the State must

maintain a "regularly update[d] . . . internet-based searchable database" that includes the names

of all persons appearing to be entitled to unclaimed property, and it must publish a notice in a

daily newspaper each June and December stating that the State holds certain unclaimed property

that is available to be claimed. *Id*. § 1150(d), (f) & (g).

To file a claim, an alleged owner must search for their name in the State's search engine

(the "State Online Record"), select abandoned property that they believe they may be the rightful

owner of, provide contact information to the State, and then electronically submit a claim to the

office of the State Escheator. *See Claim Unclaimed Property*, Del. Unclaimed Prop.,

https://unclaimedproperty.delaware.gov/app/claim-search (last visited Sept. 21, 2023)

(referenced in D.I. 1 at ¶ 51). Once a claim is submitted, the State Escheator is tasked with

determining whether the claimant is entitled to the property; she does so by assessing whether

the claimant has provided "evidence sufficient to establish to the reasonable satisfaction of the

State Escheator that the claimant is the owner of the property." Del. Code Ann. tit. 12,

§ 1166(a). To that end, the State Escheator provides the claimant with a list of documentation

that the State Escheator requires in order to confirm the identity and ownership interest of the

claimant and to otherwise complete the claim. (D.I. 17 at 3) If the State Escheator receives

sufficient evidence to establish to her reasonable satisfaction that the claimant is the owner of the

property, the State Escheator "shall pay or deliver [the] property to a claimant[.]" Del. Code

Ann. tit. 12, § 1166(a). This payment does not include any interest accrued on the abandoned

property while it was in the possession of the State. Indeed, on that front, the DUPL specifically

states that "no person entitled to or owner of property shall be entitled to receive interest on

account of such property from and after the date a report of such property is made to the State

Escheator under this chapter whether or not the person was entitled to interest on such property

prior to such date." *Id*. § 1154(a).

The State Escheator has "full and complete authority to determine all claims under" the

DUPL, and is required to "immediately send written notice of [such] determination to the

claimant[.]" *Id*. § 1167(a). The claimant may apply for a hearing and determination of the claim

by the Tax Appeal Board within 120 days of the sending of this notice. *Id*. The decision of the

Tax Appeal Board may be appealed to the Delaware Court of Chancery by either the claimant or

the State Escheator. *Id*. § 1167(b).

### 2.    The Allegations

Plaintiff is a citizen and resident of New Castle County, Delaware. (D.I. 1 at ¶ 11) He

alleges that the State Online Record reflects that the State Escheator "holds [his] property in

custody" and that this property is "'presumed abandoned'" under the DUPL. (*Id.* at ¶¶ 11, 51

(citation omitted))[4]  Light identifies his alleged property as "a claim of over $50.00 reported by Office Depot Inc." (hereafter, the "Unclaimed Property") that has been delivered to the State Escheator pursuant to the DUPL, converted into cash and then held in the State Escheator's custody since that time.  (*Id.* at ¶¶ 51-53 (noting that while the State Escheator "has held Plaintiff's property in custody . . . the State Escheator has converted the property into cash and has used the property for public purposes, including by investing the property and earning interest, and otherwise using it to fund the State's operations and programs"))

It is undisputed that Plaintiff has not yet made a claim for this Unclaimed Property.  (D.I. 1 at ¶ 54 ("*[S]hould* Plaintiff claim his property. . .") (emphasis added); D.I. 17 at 5)  More specifically, Plaintiff has not yet electronically submitted a claim to the State Escheator and has not provided any evidence to the State Escheator that would enable her to confirm to her reasonable satisfaction that Plaintiff is the rightful owner.  (D.I. 1 at ¶ 54; D.I. 17 at 5)

## II.    DISCUSSION

With their Motion, Defendants made numerous arguments as to why Plaintiff's Complaint should be dismissed.  These included arguments that:  (1) claims against the State Treasurer should be dismissed on the ground that she does not administer or have any decision-making authority with regard to the DUPL, (*see* D.I. 17 at 6); (2) claims against Defendants should be dismissed pursuant to Rule 12(b)(1) for failure to demonstrate standing, (*id.* at 7-9); (3) claims against Defendants should be dismissed pursuant to Rule 12(b)(1) for failure to demonstrate ripeness, (*id.* at 9-11); (4) claims against Defendants should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim, (*id.* at 12-18); and (5) the class action claims should

---

[4]     In his Complaint, Plaintiff refers to property subject to the Act as "abandoned property" and "unclaimed property" interchangeably; the Court will also do so herein.  (D.I. 1 at ¶ 19)

be dismissed because a class cannot continue if the named plaintiff lacks a viable case, (*id.* at 18-19). The Court, however, need only address Defendants' arguments as to dismissal for lack of ripeness[5] and for failure to state a claim. For the reasons set out below, the Court will grant the Motion on both of those grounds.

---

[5]     Although Defendants brought their Motion pursuant to Rule 12(b)(1) on both standing and ripeness grounds (i.e., two doctrines that originate from the same Article III requirement that a case or controversy must exist between the parties), during argument on the Motion, the parties seemed to agree that the Court should assess subject matter jurisdiction here via a ripeness analysis. (Tr. at 22-23, 39-40; *see also id.* at 69-71) Precedent from the United States Court of Appeals for the Third Circuit indicates that in a situation like this one, where a plaintiff brings a pre-enforcement action, "the justiciability issue . . . can equally be described in terms of" ripeness or standing. *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 n.8 (2007)); *see also Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 825 F.3d 149, 167 n.15 (3d Cir. 2016) ("[W]hether Plaintiffs have standing or their claims are ripe . . . both turn on whether the threat of future harm . . . is sufficiently immediate to constitute a cognizable injury."). "It is sometimes argued that standing is about *who* can sue while ripeness is about *when* they can sue, though it is of course true that if no injury has occurred, the plaintiff can be told either that *she* cannot sue, or that she cannot sue *yet*." *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994) (internal quotation marks and citation omitted) (emphasis in original). Here, the Court agrees with the parties that it makes best sense to assess the Rule 12(b)(1) issue by examining whether Plaintiff's claims are ripe. As will be seen herein, that is really the gravamen of Defendants' Rule 12(b)(1) challenge—i.e., that Plaintiff brought his claims too early, and that he should only have pressed those claims after he completed the process of making a viable claim to the Unclaimed Property at issue. For this reason, the Court will focus its Rule 12(b)(1) analysis on the question of ripeness.

     In any event, because the Court will below conclude that Plaintiff did not sufficiently demonstrate ripeness, the Court need not address Defendants' additional argument as to standing. *See Persico v. Sebelius*, 919 F. Supp. 2d 622, 647 (W.D. Pa. 2013) ("Defendants have made the alternative argument that this Court lacks subject matter jurisdiction over the pending case based upon the Plaintiffs' alleged lack of standing. Because our conclusion as to lack of ripeness is dispositive, we need not consider this alternative basis for dismissal."); *see also Col. Christian Univ. v. Sebelius*, Civil Action No. 11-cv-3350-CMA-BNB, 2013 WL 93188, at *9 (D. Colo. Jan. 7, 2013) (declining to address the defendants' standing argument where the case was not ripe for review); *Catholic Diocese of Biloxi, Inc. v. Sebelius*, Civil No. 1:12CV158-HSO-RHW, 2012 WL 6831407, at *6 (S.D. Miss. Dec. 20, 2012) (same).

**A.    Should Plaintiff's Claims be Dismissed for Lack of Ripeness?**

In assessing ripeness, the Court will begin by setting out the relevant legal standard.  It will then turn to the merits of the parties' arguments.

**1.    Legal Standard**

A court must grant a motion to dismiss pursuant to Rule 12(b)(1) if it lacks subject matter jurisdiction to hear a claim.  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).  Pursuant to Article III of the Constitution, in order for a court to have subject matter jurisdiction over a dispute, the matter brought before the court must present a ripe case or controversy.  U.S. Const., art. III, § 2; *Warren v. New Castle Cty.*, Civ. No. 07-725-SLR-LPS, 2008 WL 2566947, at *12 (D. Del. June 26, 2008) ("Ripeness . . . goes to the very heart of whether a court has subject matter jurisdiction.") (internal quotation marks and citation omitted).  "The existence of a case and controversy is a prerequisite to all federal actions, including those for declaratory or injunctive relief."  *Angelo v. NVR, Inc.*, Civil Action No. 18-523-RGA, 2021 WL 723255, at *2 (D. Del. Feb. 24, 2021) (internal quotation marks and citations omitted).

The purpose of the ripeness doctrine "is to prevent the courts . . . from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 148-49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977).  "At its core, ripeness works 'to determine whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine.'"  *Plains All Am. Pipeline*

*L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (citation omitted).  Concerns addressed by the doctrine include whether the parties are in a "sufficiently adversarial posture[,]" whether the facts of the case are "sufficiently developed[,]" and whether a party is "genuinely aggrieved[.]" *Id.* (internal quotation marks and citation omitted).

The Supreme Court of the United States has identified two principal considerations for determining ripeness, including:  (1) "'the fitness of the issues for judicial decision'" and (2) "'the hardship to the parties of withholding court consideration.'"  *Id.* (quoting *Abbott Lab'ys*, 387 U.S. at 149).  To assess ripeness in cases requesting declaratory and injunctive relief, the United States Court of Appeals for the Third Circuit has applied a "somewhat refined test" for ripeness, drawn from its decision in *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643 (3d Cir. 1990) ("the *Step-Saver* framework").  Pursuant to the *Step-Saver* framework, a court assesses:  "(1) the adversity of the parties' interests, (2) the conclusiveness of the judgment, and (3) the utility of the judgment."[6]  *Plains*, 866 F.3d at 539-40 (internal quotation marks and citations omitted).  Such a case must satisfy all three factors to be considered ripe for adjudication.  *Id.* at 545 (concluding that a particular claim was ripe "[s]ince all three *Step-Saver* elements are present"); *Univar Sols., Inc. v. Geisenberger*, C.A. No. 18-1909 (MN), 2022 WL 2064990, at *6 (D. Del. June 8, 2022) (declining to address the remaining two factors in the *Step-Saver* framework, after determining that the plaintiff failed to establish the adversity of the parties' interests); (*see also* D.I. 17 at 9; Tr. at 26, 60).  Importantly, the burden of establishing that the plaintiff's claim is ripe is on the plaintiff.  *Univar, Inc. v. Geisenberger*, 409 F. Supp. 3d 273, 279 (D. Del. 2019).

---

[6]    The parties agree that the Court should apply the *Step-Saver* framework here.  (Tr. at 26, 60)

2.    **Discussion**

In addressing the *Step-Saver* framework, Defendants assert that Plaintiff has not

adequately demonstrated the adversity of the parties' interest (i.e., factor one) and conclusiveness

(i.e., factor two).  (Tr. at 26-27)  For the reasons discussed below, the Court concludes that

Plaintiff has failed to establish an adversity of interest, which is dispositive here.[7]

In the context of a pre-enforcement challenge, for parties' interests to be adverse, then

"harm will result if the declaratory judgment is not entered."  *Plains*, 866 F.3d at 541 (internal

quotation marks and citation omitted).  To that end, there must be a "substantial threat of real

harm" and the threat must "remain real and immediate throughout the course of the litigation."

*Id.* (internal quotation marks and citation omitted).  However, when "the plaintiff's action is

based on a contingency, it is unlikely that the parties' interests will be sufficiently adverse to

give rise to a case or controversy within the meaning of Article III."  *Id.* (internal quotation

marks and citation omitted).

Here, we know what Plaintiff's claim is about.  Plaintiff is asserting that he is the true

owner of the Unclaimed Property.  (D.I. 1 at ¶ 51)  And he asserts that in light of Section 1154(a)

of the DUPL, his constitutional rights will be violated in the future if and when he makes a claim

on that property—in that the State will thereafter fail to provide him with any interest that

accrued on the property, or other "just compensation" for the State's use of the property,[8] during

---

[7]    As a result, the Court need not address Defendants' arguments as to
conclusiveness.

[8]    During the hearing, Plaintiff's counsel repeatedly stated that Plaintiff's claim is
"not for interest . . . [t]he claim here is for just compensation, and it's sometimes useful to think
of interest as a proxy for just compensation, but it's not."  (Tr. at 44)  Counsel also stated that
"what makes the taking unconstitutional" is "not that we don't get interest[; i]t's that we get
nothing[.]"  (*Id*. at 45)  It is true that in his Complaint, Plaintiff seeks "just compensation" from
the State for the use of his Unclaimed Property.  (D.I. 1 at ¶¶ 54, 65, 70 & p. 14)  But it seems

the time it was in the State's possession. (*Id*. at ¶¶ 54, 65, 70; *see also* D.I. 24 at 12 (Plaintiff

asserting that "when [he] recovers his unclaimed property, he *will not* receive just compensation

for the time it was in the State's possession") (emphasis in original))

But from a ripeness perspective, has Plaintiff established a "substantial threat" that this

harm will actually befall him?  Or, in contrast, does the record show that Plaintiff's action here is

"based on a contingency"?  In the Court's view, these ripeness questions do not go Plaintiff's

way.

In explaining why, the Court must first address a threshold matter regarding the type of

ripeness challenge Defendants are making here.  A motion to dismiss for want of ripeness

pursuant to Rule 12(b)(1) may be brought as a "facial" attack or a "factual" attack.  *See Borough

of McKees Rocks v. Allegheny Cty. Sanitary Auth.*, 2:21-cv-530-NR, 2022 WL 1443749, at *3

(W.D. Pa. May 6, 2022); *Resnik v. Woertz*, 774 F. Supp. 2d 614, 627 (D. Del. 2011); *see also

Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357-58 (3d Cir. 2014) (assessing facial and factual

challenges as to a Rule 12(b)(1) standing issue).  A "facial" attack "contests the sufficiency of

the pleadings . . . whereas a factual attack concerns the actual failure of a plaintiff's claims to

comport factually with the jurisdictional prerequisites."  *Const. Party of Pa.*, 757 F.3d at 358

(internal quotation marks, citations and brackets omitted).  "Where the movant presents a facial

challenge, the court must accept all factual allegations in the complaint as true and may only

---

strange for Plaintiff to suggest that his claim is "not for interest."  That is because:  (1) it is the
expected future decision of the State not to pay interest on the use of the Unclaimed Property that
drove Plaintiff to file his claims; and (2) interest owed on the use of the property seems to be at
least one possible form of "just compensation" that Plaintiff seeks.  Indeed, Plaintiff has
repeatedly indicated the same in his Complaint and in his briefing on the Motion.  (*Id*. at ¶¶ 8,
10, 29, 37-38, 40, 44-45, 47-48, 59; *see also* D.I. 24 at 1-4, 6-9, 11, 13-14)  In any event,
Plaintiff's counsel confirmed that whether interest or some other form of just compensation is
sought here has no impact on the ripeness issue at play in the case.  (Tr. at 46)

consider the complaint and documents referenced therein or attached thereto." *Resnik*, 774 F. Supp. 2d at 627. "Where the movant presents a factual challenge, however, the court need not confine its consideration to the allegations of the complaint nor accept those allegations as true." *Id.* It is important to assess whether a challenge is facial or factual, as that determines how the pleading must be reviewed. *Const. Party of Pa.*, 757 F.3d at 357.

Here, this "facial or factual" challenge issue is a bit tricky. (Tr. at 20 (Defendants' counsel noting that the question arises in a "unique" context here)) As was noted above, in his Complaint, Plaintiff alleges that he is the actual owner of the Unclaimed Property. (D.I. 1 at ¶ 51) Moreover, if one goes to the State Online Record (which is referenced in the Complaint), (*id.*), one can see that there is indeed an amount of over $50 relating to Office Depot, Inc. for which the owner's name is reported to be John Light; the record also notes that this person is from Wilmington, Delaware. *See Claim Unclaimed Property*, Del. Unclaimed Prop., https://unclaimedproperty.delaware.gov/app/claim-search (last visited Sept. 21, 2023). Now, in their briefing, Defendants did not necessarily *agree* that Plaintiff is the same John Light who is the owner of the Unclaimed Property at issue. (D.I. 26 at 4 ("[T]his John Light is certainly not the only person in the world with the same name.")) However, Defendants did not present any competing facts (e.g., via affidavit or otherwise) in an attempt to try to establish that Plaintiff is *not* actually the owner of the Unclaimed Property. Because Defendants did not present any competing evidence on this score nor as to any other relevant allegation, in the Court's view, Defendants' ripeness challenge has to be considered a facial challenge. *See, e.g.*, *Const. Party of Pa.*, 757 F.3d at 358 (considering a Rule 12(b)(1) challenge to be a facial attack, since the movant "filed the attack before it filed any answer to the Complaint or *otherwise presented competing facts*") (emphasis added); *Resnik*, 774 F. Supp. 2d at 627 (same); *see also NE Hub*

*Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 n.7 (3d Cir. 2001) (stating that a facial challenge arises when a defendant challenges "a complaint for failure to allege subject matter jurisdiction[,]" while a factual challenge "contend[s] that the court in fact lacks subject matter jurisdiction, no matter what the complaint alleges"). And since that is so, the Court must accept Plaintiff's factual allegations—including that he is the owner of the Unclaimed Property—to be true. (D.I. 24 at 13; Tr. at 24-25)

But that does not end the ripeness inquiry. The Complaint does not allege that Plaintiff has actually submitted a claim for the Unclaimed Property to the office of the State Escheator. Indeed, it is undisputed that Plaintiff has not done so. Thus, it is also undisputed that Plaintiff has not attempted to present any documentation to the State Escheator that would amount to "*evidence* sufficient to establish *to the reasonable satisfaction of the State Escheator* [that Plaintiff] is the owner of the property." Del. Code Ann. tit. 12, § 1166(a) (emphasis added). And, relatedly, it is undisputed that the State Escheator has made no determination about whether Plaintiff is, in fact, the same person who is listed in the State Online Record as the property owner.

This matters with regard to the ripeness question at issue. That is because Defendants are asserting that, even if Plaintiff's challenge is a facial challenge, there are still important contingencies at play relating to Plaintiff's claims—particularly regarding whether Plaintiff will attempt to and will be able to make a *sufficient evidentiary showing* to demonstrate that he is a viable claimant. (Tr. at 42-43, 57, 59) In other words, even if one assumes (as the Court will here) that Plaintiff is the actual owner of the Unclaimed Property, the following relevant questions are still left unanswered on this record: Will Plaintiff actually make a claim on that property? And if he does, will he be able to sufficiently demonstrate his ownership rights? After

all, being the owner of a piece of property is a different thing from mustering relevant evidence demonstrating that this is so. And pursuant to the DUPL, it is not as if a person need only make the bare, *pro forma* statement that they own the abandoned property at issue in order to claim it. To the contrary, as noted above, a successful claimant must present sufficient "evidence" in that regard. Del. Code Ann. tit. 12, § 1166(a). Whether Plaintiff could meet that bar is uncertain.

To make things more concrete here, assume that what is at issue is an Office Depot gift card that was worth more than $50, and that is affiliated with a "John Light" from Wilmington, Delaware. Does Plaintiff have any evidence that would help to show that he is the person who once owned or once was entitled to this gift card (such as some record of purchase from Office Depot)? It is not clear from the record, one way or the other, that he does. If he does not, would Plaintiff simply attempt to prove ownership by submitting an identification document (such as a driver's license) showing that his name is John Light and that he lives somewhere in New Castle County, Delaware,[9] in the hopes that this would be sufficient? If so, does Plaintiff have such identification? If he does, would presentation of that type of identification be enough to meet the statute's evidentiary bar? Or, would Plaintiff's name be deemed sufficiently common such that the State Escheator would demand more evidence in order for Plaintiff to meet his burden (so as to confirm, for example, that Plaintiff is not attempting to claim property that belongs to a family member or some other person with the same name)? (*See* Tr. at 77) If so, could Plaintiff have provided such evidence? Since Plaintiff has never attempted to actually make a claim for the

---

[9]    The Court notes that the Complaint states only that Mr. Light lives in New Castle County, Delaware. (D.I. 1 at ¶ 11) The State Online Record says that the Unclaimed Property at issue belongs to a John Light from Wilmington, Delaware. Wilmington is one of many cities and towns located in New Castle County. Does Mr. Light actually live in Wilmington? Would he be able to prove that to the satisfaction of the State Escheator? These questions too are unanswered on this record.

**-16-**

Unclaimed Property at issue, we do not know the answer to any of these questions. (D.I. 17 at

11 (Defendants arguing that "Light is not in a position adverse to the State because Light has not

filed a claim with the State . . . [and because] there can be no controversy where Light failed to

substantiate an ownership interest and failed to afford the State the opportunity to review his

claim in the first instance"); *see also* D.I. 26 at 3-4 (same))[10]

---

[10]      Surprisingly (and somewhat perplexingly), neither side submitted any record
evidence regarding the process by which the State Escheator makes determinations of ownership
pursuant to the DUPL. At oral argument, counsel for both sides made many different assertions
about what this process entails—assertions amounting to attorney argument that the Court cannot
rely on here. For example, Defendants' counsel said that: (1) the State Escheator is "not going
to take [a claimant's] word" that they are the true owner of a piece of unclaimed property; (2)
depending on the facts, sometimes all a claimant must do to meet the evidentiary bar is to
"provid[e] a driver's license[,]" but in other cases, the State requires that additional
documentation be provided, such as address information, or court documents, or information
associated with the property at issue; and (3) the State Escheator denies approximately 10% of
the claims for unclaimed property that are made each year. (Tr. at 9-10, 13-14, 75-76)
Plaintiff's counsel, for their part, asserted that the State Escheator's role in the determination
process simply amounts to a "ministerial function" or a "check-the-boxes"-type event, one
allowing the State Escheator no real "discretion" to deny claims like Plaintiff's for want of
evidence. (*Id*. at 64-66)

        The key point here, however, is that we do not have any record evidence to help the
Court determine whether any of these bald assertions are correct. And, as Plaintiff's counsel
acknowledged at the hearing, one key reason *why* the Court does not "know what documentation
the State requires [is] because [Plaintiff] ha[s not] gone through the process [to submit a claim]."
(*Id*. at 66) Exactly. It was Plaintiff's burden to demonstrate ripeness. If Plaintiff believed that
the claims determination process worked in a manner leaving no doubt that his claim (had it been
submitted) would have been rubber-stamped and approved, then Plaintiff could have alleged
facts to that effect in his Complaint (as to a facial challenge to jurisdiction). Or he could have
provided the Court with such evidence, via sworn affidavits or declarations, demonstrating that
this is so (as to a factual challenge to jurisdiction). He did none of this. Instead, all we know
about the determination process is what the statute tells us: that "evidence" must be submitted
by a claimant, and that this evidence must be of a type that can substantiate, to the "reasonable
satisfaction of the State Escheator[,] that the claimant is the owner of the property." And that no
such evidence was submitted to the State here.

        In sum, the lack of real world evidence regarding what the DUPL claims process looks
like is a reason why Plaintiff has not met his burden as to ripeness.

Plaintiff argues to the contrary that the case is ripe because "*when* Plaintiff recovers . . . *his* property, it is certain he will not [obtain] interest or other just compensation[.]" (D.I. 24 at 14 (emphasis added))  But this statement itself demonstrates the eminently contingent nature of Plaintiff's claims.  It is not clear that there will ever be a "when"—that is, that Plaintiff will in fact ever make a claim on this property.[11]  And if he does, it is uncertain whether he will be able to show that it is in fact "his" property—i.e., by sufficiently demonstrating ownership.  In the absence of those contingent events occurring, Plaintiff will never suffer the constitutional harms that he complains of in this case.  In light of these contingencies, the parties' interests are not sufficiently adverse so as to give rise to an Article III case and controversy.

The Third Circuit's decision in *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534 (3d Cir. 2017) is instructive and supports the Court's conclusion here.  (*See also* D.I. 26 at 6)  In *Plains*, the DUPL (referred to as the "Escheats Law" in the opinion) was also at issue.  866 F.3d at 537.  In dispute was a portion of the law that permitted the State Escheator—in order to ensure that holders were complying with the law's requirements—to examine a holder's records; the DUPL also stated that the State Escheator could contract with private third parties to perform this audit on the State's behalf.  *Id.* (citing Del. Code Ann. tit. 12, §§ 1171 & 1176(a))  The DUPL stated that if the holder did not retain the required records, then the State Escheator could "'determine the amount of property due using a reasonable method of estimation [hereafter, "estimation" or "the estimation process"].'"  *Id.* (citing Del. Code Ann. tit. 12, § 1176(a)).  After

---

[11]     Indeed, in his Complaint, Plaintiff appeared to be cagey about whether he actually intended to make a future claim.  In that regard, the Complaint asserts that "[u]nder [Section] 1154 . . . *should* Plaintiff claim his property, the State Escheator will pay Plaintiff a cash payment equal to the total sum of the principal amount of the unclaimed property but will not pay any just compensation to Plaintiff for the State's use of that property during the period of custody."  (D.I. 1 at ¶ 54 (emphasis added))

such an audit, if the State Escheator determined that a holder had unclaimed property due and

owing, she could then assess liability (i.e., a request for payment, plus interest and penalties),

subject to a review of that decision by the Delaware Court of Chancery.  *Id.* (citing Del. Code

Ann. tit. 12, §§ 1179(b) & 1183).

In *Plains*, a Delaware official sent the plaintiff a notice indicating that the State intended

to audit its records over nearly a 20-year period, so as to evaluate the plaintiff's compliance with

the law.  *Id.*  The State hired an auditing firm, which sent document requests to the plaintiff; the

plaintiff responded by saying it would not produce the documents, and by raising several

constitutional objections to the audit.  *Id.*  The plaintiff thereafter sued a number of relevant

parties (including the State Escheator) in federal court, arguing that the proposed audit, *inter*

*alia*, violated various aspects of the Constitution, seeking an injunction as to the audit, and

seeking attorney's fees.  *Id.* at 538.  The District Court dismissed the case, finding that all of

plaintiff's claims were unripe (except for an equal protection claim that was dismissed on

another ground).  *Id.*

On appeal, the Third Circuit agreed with the District Court that the plaintiff's facial

claims were not ripe.  In assessing the adversity of interest factor, the *Plains* Court began by

noting that, where threatened action by the government is concerned, a party seeking review

need not always have suffered a completed harm in order to establish adversity.  *Id.* at 541.  But

the Court nevertheless determined that the plaintiff had not sufficiently satisfied the adversity of

interest element.  In first addressing the plaintiff's challenge to the estimation process, the Court

noted that the process "merely requires [the plaintiff] to sit back and wait while Delaware

calculates its liability" and that "estimation is not a burdensome process 'where the impact of the

administrative action could be said to be felt immediately by those subject to it in conducting

their day-to-day affairs.'" *Id.* (quoting *Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 164

(1967)).  The *Plains* Court also explained that while "one possible result of the estimation

process—an arbitrary penalty—could harm [the plaintiff], that harm would only result after

Delaware (1) concluded that [the plaintiff's] records were inadequate, (2) used estimation, (3)

found past-due abandoned property, and (4) erroneously calculated what was owed to the State.

As such, the only alleged harm [the plaintiff] could suffer from estimation is based on

contingencies[,] and its [constitutional] claims lack both sufficient adversity for ripeness and a

cognizable Article III injury." *Id.*  Additionally, the *Plains* Court addressed the plaintiff's

challenges relating to the State's ability to have an auditor conduct an audit of the plaintiff's

business (without using estimation).  It noted that while such audits could be "quite

burdensome[,]" the plaintiff's claims in this regard were also not ripe, in part because the "audit

has not yet begun[,] so it is wholly speculative whether [it] will be particularly burdensome and

costly and result in an enforcement action"—such that the "extent of the burden is thus

'conjectural or hypothetical.'" *Id.* at 542 (citation omitted).

> *Plains*' analysis is helpful in assessing the adversity of interest element here.  Just as in
*Plains*, here the DUPL does not require Plaintiff to go through a "burdensome process" in order
to make a claim on the property at issue, or in order to try to demonstrate to the State Escheator's
satisfaction that he is the property owner.  Instead, all that is required is the submission of an
electronic form and the provision of some amount of documentation to the State in support of the
claim.[12]  (D.I. 26 at 6)  Moreover, as in *Plains*, here any harm to Plaintiff would only come after

---

[12]    Plaintiff does not (and cannot) seriously dispute that this burden is minimal.
Indeed, Plaintiff's counsel conceded as much at the hearing.  (Tr. at 62-63 (counsel agreeing that
the DUPL does not place a "great burden" on any claimant, as the claims process is "certainly
not time consuming and it certainly doesn't require a tremendous amount of effort"); *see also id.*
at 43)  This admission thus begged the question:  Why *hadn't* Plaintiff made a claim yet?  When

multiple contingencies were first satisfied—including that Plaintiff would actually make a claim to the property, that he would thereafter submit evidence regarding ownership, and the State Escheator would then make a determination that this submitted evidence was sufficient. (*Id*.) As in *Plains*, then, it is "wholly speculative" whether a future administrative process will result in Plaintiff being deprived of interest or just compensation on the Unclaimed Property at issue. *See also Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647-48 (3d Cir. 1990) (concluding that the plaintiff's claims were not ripe, in part due to the lack of adversity of interest between it and defendants, where the plaintiff was asking the court to find the defendants liable only "if" another event occurred—i.e., that in separate lawsuits, the plaintiff's customers would be able to establish the presence of certain defects in the plaintiff's product) (internal quotation marks and citations omitted); *see also Marathon Petroleum Corp. v. Sec'y of Fin. of Del.*, 876 F.3d 481, 497 (3d Cir. 2017) (concluding that the plaintiffs' challenge as to the scope of the State's audit

---

asked this question at the hearing, Plaintiff's counsel responded that Plaintiff had not done so because "we do[ not] know what the consequence is of doing that." (Tr. at 44) Specifically, Plaintiff's counsel explained that Plaintiff was not sure whether "you are required to or asked to or simply are deemed to waive any claim to just compensation when you click that button that says 'File claim.'" (*Id.* at 47-49)

     As an initial matter, Plaintiff never raised in his briefing the argument that he had failed to make a claim because of the potential waiver-related consequences of doing so. (*Id.* at 63) Any new argument to that effect made during the hearing has itself been waived. *See Int'l Bus. Machs. Corp. v. Rakuten, Inc.*, Civil Action No. 21-461-GBW, 2022 WL 17848779, at *11 n.7 (D. Del. Dec. 22, 2022) (citing cases). Moreover, later during the hearing, Plaintiff's counsel seemed to undercut this argument, when counsel stated that "there[ is] no reason [for Plaintiff] not to [make a claim for the Unclaimed Property.]" (Tr. at 74) And lastly, even if Plaintiff had not waived (or otherwise disclaimed) this argument (i.e., that he avoided the claims process because he did not want to waive the right to later argue for just compensation as to the State's use of his Unclaimed Property), such an argument would still fail. That is because Plaintiff has not met his burden to show that filing a DUPL claim *would actually lead to waiver of such a right*. Plaintiff provides no evidence indicating, *inter alia*, that in order to claim property pursuant to the DUPL, one must waive their right to challenge Section 1154(a) in court. (*Id.* at 47-49) Indeed, at the hearing, Defendants suggested that this is simply not the case. (*Id.* at 76)

pursuant to the DUPL was not ripe due to the lack of adversity of the parties, in that the State had not yet formally demanded compliance with the audit, such that the plaintiffs were not faced with the decision of choosing whether to submit to the audit or face penalties).[13]

_____

[13]    In support of his argument that his claims are ripe (and that it would serve no purpose for him to be required to make a claim under the DUPL for his Unclaimed Property), Plaintiff cites to the United States Court of Appeals for the Seventh Circuit's opinion in *Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017). The Court, however, finds Plaintiff's reliance on *Kolton*—a case that was not decided on ripeness grounds, but instead on forfeiture grounds—to be misplaced.

In *Kolton*, the plaintiff alleged that a provision of the Illinois Disposition of Unclaimed Property Act ("765 ILCS 1025/15"), which denied owners of unclaimed property interest on that property while it was in the state's possession, violated the Fifth and Fourteenth Amendments as an unconstitutional taking. 869 F.3d at 533. The District Court concluded that the plaintiff had failed to establish subject matter jurisdiction because he had failed to try to obtain interest-based compensation on his property with the state, prior to filing his claims in federal court. *Id.* The Seventh Circuit disagreed, concluding under the circumstances that the plaintiff need not first present a claim for return of his property with the State pursuant to 765 ILCS 1025/15 in order to have a justiciable case or controversy. *Id.* at 534.

But in *Kolton*, the key issue raised by the plaintiff and addressed by the Seventh Circuit was different than what is at play here. The *Kolton* Court's point was that it did not make any sense to first require the plaintiff to try to obtain interest income from the state as to his unclaimed property before filing a federal suit. This was because: (1) the text of 765 ILCS 1025/15 clearly precluded the Illinois Treasurer from turning over interest and other income that has accrued on property in state custody; and (2) a prior decision of the Illinois Supreme Court upheld the validity of 765 ILCS 1025/15's provisions permitting the state to keep any earnings on such property. *Id.* at 534-35. In light of this, the Seventh Circuit concluded that requiring the plaintiff to have first presented a claim for lost interest to the state's treasurer or to a state judge before filing suit would have been "pointless [and] perhaps sanctionably frivolous"; the failure to do so thus did not bar the claims from being ripe. *Id.* at 535.

However, in contrast to *Kolton*, here the key ripeness issue does not have to do with whether Plaintiff would have been able to convince the State to provide him interest or just compensation for the time value of his Unclaimed Property. Instead, the key issue relates to Plaintiff's failure to try to demonstrate (to the satisfaction of the State Escheator) that he was actually the owner of the Unclaimed Property—a fact not addressed in *Kolton*. (D.I. 26 at 5-6 (distinguishing *Kolton* in part because here the issue is whether "[Plaintiff] is definitively the appropriate claimant"); Tr. at 28-29, 53 (Plaintiff's counsel acknowledging this difference between the instant case and *Kolton*))

Finally, the Court believes that in addition to being legally correct, this outcome makes practical sense, in light of the role that federal courts play in resolving legal disputes. When the constitutionality of a state's unclaimed property statute is at issue, it cannot be the case that any citizen of that state—regardless of whether they have a viable claim to any actual unclaimed property—can challenge the statute's *bona fides*. Were a federal court to issue legal rulings on this question to any citizen who brings suit, it would essentially be offering up an improper advisory opinion on a purely legal issue. That is not the role of the court. *See Bell Atl. Corp. v. MFS Commc'ns Co., Inc.*, 901 F. Supp. 835, 846 (D. Del. 1995) ("[T]he simple assertion that the parties disagree on a legal issue does not create adversity of interest or a justiciable controversy[.] . . . In almost any unripe case, the parties have at minimum a difference of opinion, even diametric opposition, as to a legal issue."); *see also* (Tr. at 36-37). An outcome to the contrary cannot be what is contemplated by Article III.

So, for the reasons discussed above, the Court concludes that Plaintiff has failed to adequately establish ripeness and that this case must be dismissed as a result.

### B.    Should Plaintiff's Claims Alternatively Be Dismissed for Failure to State a Claim?

The Court next turns to another ground Defendants raise in support of their Motion: whether Plaintiff has failed to state a claim pursuant to Rule 12(b)(6). For the reasons that follow, the Court concludes that even if Plaintiff had adequately alleged subject matter jurisdiction, he has not sufficiently stated his claim. Therefore, the Court will dismiss the claims in the Complaint in the alternative for this reason as well.

The Court again begins with the relevant legal standard, before moving on to discuss the parties' positions and arguments.

### 1.    Legal Standard

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In assessing such a motion, the court first separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court determines "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft*, 556 U.S. at 679).

### 2.    Discussion

Pursuant to the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, "private property" shall not "be taken for public use[,] without just compensation." U.S. Const. amend. V; *see also Chi. Burlington & Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 236 (1897). Similarly, Article I, Section 8 of the Delaware Constitution states that no person's property shall "be taken or applied to public use without the consent of his or her representatives, and without compensation being made." Del. C. Ann. Const., Art. 1, § 8.[14] To assert a valid takings claim, a plaintiff must have "a property interest that is constitutionally protected." *Simon v. Weissman*, 301 F. App'x 107, 110 (3d Cir. 2008). Such interests "are not

---

[14]    The Court will herein consider the protections afforded by the Fifth Amendment and Article I, Section 8 of the Delaware Constitution to be effectively the same, as courts have noted that their scope is substantially identical. *See, e.g., New Castle Cty. Sch. Dist. v. State*, 424 A.2d 15, 16 (Del. 1980) (noting that Delaware courts have treated the constitutional guarantees under the Fifth Amendment and Article I, Section 8 of the Delaware Constitution as "provid[ing] the same degree of protection against governmental takings of property without just compensation" such that "the federal and the State law questions are essentially one and the same").

**-24-**

created by the Constitution.  Rather, they are created and their dimensions are defined by

existing rules or understandings that stem from an independent source such as state law."

*Texaco, Inc. v. Short*, 454 U.S. 516, 525 (1982) (internal quotation marks and citation omitted).

The parties' arguments here all stem from the same core question:  Has Plaintiff

adequately alleged a constitutionally protected property interest?  Defendants argue that Plaintiff

cannot establish a cognizable claim that Section 1154(a) of the DUPL is unconstitutional,

because he does not have a constitutionally protected property interest in the interest that accrues

on abandoned property while it is in the State's possession.  (D.I. 17 at 13)  Plaintiff disagrees.

(D.I. 24 at 15-20)

In assessing this issue, the Court begins its discussion with *Simon v. Weissman*, 301 F.

App'x 107 (3d Cir. 2008), a key Third Circuit decision.  In *Simon*, the Third Circuit considered

whether Pennsylvania's Disposition of Abandoned and Unclaimed Property Act (the

"DAUPA"), which relieved the State from having to pay interest earned on unclaimed property,

imposed a taking for which just compensation was due, pursuant to the Fifth and Fourteenth

Amendments.  301 F. App'x at 108-09.  Relying on the common law principle that "interest

follows the principal" in ownership, the plaintiffs argued, *inter alia*, that Pennsylvania's failure

to remit interest accrued on unclaimed property while in its possession violated their

constitutional rights and necessitated just compensation.  *Id.* at 111 (internal quotation marks and

citations omitted).  Defendants (hereafter, "Pennsylvania") disagreed and moved for summary

judgment on the basis that no such taking without just compensation had occurred.  *Id.* at 109.

The United States District Court for the Eastern District of Pennsylvania awarded summary

judgment to Pennsylvania on this ground.  *Id.*

In *Simon*, the Third Circuit began by discussing the various principles underlying the dispute, including a state's powers to take control of abandoned property. For instance, the Third Circuit noted that a state's ability to escheat personal property under appropriate circumstances cannot be questioned. *Id.* at 110. "'As a broad principle of jurisprudence rather than as a result of the evolution of legal rules, it is clear that a state, subject to constitutional limitations, may use its legislative power to dispose of property within its reach, belonging to unknown persons.'" *Id.* (quoting *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 436 (1951)). "Likewise, the common law doctrine of "*bona vacantia*" [(meaning "vacant goods")] allows states to take control and dispose of abandoned property." *Id.* And although courts have "long applied the common law rule of 'interest follows the principal[,]'" the Third Circuit concluded that this rule was not meant to be applied in every instance in which someone's property is held by another. *Id.* at 110-111 (citation omitted). Indeed, the *Simon* Court noted that at the rule's outset, its scope was quite limited, and that it was never meant to be a "static principle[.]" *Id.* at 111.

With this as background, the Third Circuit turned to the issue before it. The *Simon* Court noted that the matter involved "not the 'usual and general' case" regarding interest on deposited funds, but instead whether "interest generated from *abandoned* property constitutes a cognizable property right under the Fifth Amendment." *Id.* at 112 (emphasis in original). It explained that it was aware of no "long-standing practice of courts applying the 'interest follows the principal'" rule to abandoned property. *Id.* As to the situation "where a property owner claims he is owed the fruit after abandoning the tree[,]" the Court concluded that Pennsylvania had no obligation to pay interest on property that the plaintiffs abandoned. *Id.* This is because the plaintiffs had allowed their property interest to lapse, and "[i]t is the owner's failure to make any use of the property—and not the action of the State—that causes the lapse of the property right; there is no

'taking' that requires compensation." *Id.* (quoting *Texaco*, 454 U.S. at 530).[15]  The *Simon* Court

concluded that "[b]ecause [the plaintiffs] have statutorily abandoned their property and thus have

no property right in any interest generated from that property, the Commonwealth of

Pennsylvania did not effect a taking when it refused to pay interest earned on the property while

in the custody of the state." *Id.* at 114.  It noted that this is the case even where (as relevant to

certain sections of the DAUPA) the Commonwealth has not yet taken title to the abandoned

property. *Id.*[16]

---

[15]     The Supreme Court has, in a similar context, held that a person does not retain a
property interest in property that he abandons.  Specifically, in *Texaco Inc. v. Short*, 454 U.S.
516 (1982), the Supreme Court considered whether the plaintiffs held a property right in certain
mineral interests, despite the fact that a state statute provided that mineral rights reverted to the
owner of the surface property if the owner of the rights had not used their mineral interest or
otherwise made a claim on that interest in 20 years.  454 U.S. at 530.  The *Texaco* Court
ultimately held that the statute at issue did not unconstitutionally provide for the taking of private
property without just compensation. *Id.*  This was because states may treat mineral rights that
have not been used for 20 years as being deemed abandoned, such that it is the owner's failure to
make use of the mineral rights, and not the action of the state, that causes the lapse in property
right. *Id.*  Thus, in those circumstances, there is no unconstitutional "taking" resulting in the loss
of property ownership, and no just compensation needs to be provided to the former owner. *Id.*

[16]     In *Simon*, the Third Circuit noted and distinguished the Supreme Court's decision
in *Phillips v. Washington Legal Foundation*, 524 U.S. 156 (1998)—a case in which the Supreme
Court considered the constitutionality of the Texas Interest on Lawyers Trust Account
("IOLTA") program.  301 F. App'x at 112.  In *Phillips*, the IOLTA program at issue provided
that Texas attorneys who received client funds that could not be invested profitably on behalf of
the clients were to place those funds in a Negotiable Order of Withdrawal account.  524 U.S. at
160-61.  Any interest earned on the funds deposited in an IOLTA account was to be paid to the
Texas Equal Access to Justice Foundation. *Id.* at 162.  The Supreme Court, applying the rule
that "interest follows principal[,]" concluded that "the interest income generated by funds held in
IOLTA accounts is the 'private property' of the owner of the principal." *Id.* at 172.  The Court
"express[ed] no view as to whether these funds have been 'taken' by the State[ or] an opinion as
to the amount of 'just compensation,' if any, [that is] due[,]" leaving those issues to be addressed
on remand. *Id.*

The *Simon* Court noted *Phillips*' holding, but distinguished the case on the ground that in
*Phillips*, the money at issue belonged to the clients of attorneys, such that the "rightful owner of
the property was known and identifiable, and the money was not deemed abandoned."  301 F.
App'x at 112.  In light of this, and contrary to Plaintiff's suggestion in its briefing, (D.I. 24 at 16-

After reviewing the Third Circuit's decision in *Simon*, and given the similarities between that case and the instant case, the Court does not see how it can or should deviate from *Simon*'s holding.  Here, just as in *Simon*, Plaintiff is alleging that the State effectuated a taking when it put certain abandoned property to public use without providing just compensation.  But, as in *Simon*, here the State's actions cannot rise to the level of a taking; if one assumes that Plaintiff is the true owner of the Unclaimed Property, then he was the one who allowed his alleged property interest to lapse in the first place.[17]  As a result, Plaintiff cannot have a cognizable property interest in that property—or to any income that accrues as to the property—while the property is in the State's possession.  *Texaco*, 454 U.S. at 530 (stating that the State is not required "to compensate the owner for the consequences of his own neglect").[18]  And although the Third Circuit in *Simon* was addressing a Pennsylvania state law, not the DUPL, the Court is unaware of any material differences between the two statutes that would make a difference in this context (nor did Plaintiff reference any in his briefing or at the hearing on the Motion).  (Tr. at 83)  Thus, the Court must follow *Simon* in concluding that Plaintiff does not have a cognizable property

---

18), nothing about what the Fifth Circuit did on remand in the *Phillips* case "calls into question the distinction attempted by the Third Circuit in *Simon*[,]" (*id.* at 18).  The distinction is still eminently applicable:  one case dealt with abandoned property (as to which a person no longer holds a property right and as to which there can be no taking by a state) and one case did not.  (Tr. at 121)

[17]     There is no challenge in this case to the State's determination that the Unclaimed Property at issue was in fact abandoned.

[18]     Other courts outside of the Third Circuit have reached the same conclusion as did the *Simon* Court on this issue.  *See, e.g.*, *Turnacliff v. Westly*, 546 F.3d 1113, 1118-20 (9th Cir. 2008); *Rowlette v. State*, 656 S.E.2d 619, 625-26 (N.C. Ct. App. 2008); *Smolow v. Hafer*, 959 A.2d 298, 304 (Pa. 2008); *Hooks v. Treasurer*, 961 So. 2d 425, 432 (La. Ct. App. 2007); *Clark v. Strayhorn*, 184 S.W.3d 906, 914-15 (Tex. App. 2006); *Smyth v. Carter*, 845 N.E.2d 219, 223-24 (Ind. Ct. App. 2006).

interest in any income accruing from the Unclaimed Property while it was in the State's possession.

In his briefing, Plaintiff did not seriously dispute the relevance and applicability of *Simon* to the situation here. Instead, Plaintiff heavily relied on out-of-Circuit authority to support his contrary position (i.e., that he *does* have a property right in the interest earned or to other just compensation owed as to the use of his Unclaimed Property)—stating that these judicial decisions are "better-reasoned" than *Simon*. (D.I. 24 at 19) By way of example, Plaintiff points to several opinions from the United States Court of Appeals for the Seventh Circuit suggesting that a state may not take possession of an owner's unclaimed property and retain any income earned on that property without paying just compensation to the owner. (*Id.* at 18 (citing *Goldberg v. Frerichs*, 912 F.3d 1009, 1011 (7th Cir. 2019); *Kolton v. Frerichs*, 869 F.3d 532, 533 (7th Cir. 2017)))

But regardless of the merits of the Seventh Circuit's approach, the difficulty for Plaintiff here is that *the Third Circuit*, having considered many of the same Supreme Court decisions as did the Seventh Circuit, *has simply decided differently*. (Tr. at 84-85) It is the Court's duty to faithfully apply Third Circuit precedent to cases before it, like this one, where Third Circuit law controls. *See Singleton v. Harry*, CIVIL NO: 1:13-CV-02711, 2020 WL 7366365, at *12 (M.D. Pa. Sept. 21, 2020); *Invista S.à.r.l. v. Rhodia S.A.*, Civil No. 08-941 (RBK/JS), 2009 WL 1439407, at *5 n.2 (D. Del. May 20, 2009). The Court therefore rejects Plaintiff's argument that Seventh Circuit law is "better reasoned"; instead, it will (as it must) follow the Third Circuit's holding in *Simon*.

Having concluded that *Simon* controls, the Court will now take a moment to address an additional argument that Plaintiff raised for the first time at the Motion hearing. There,

Plaintiff's counsel argued that *Simon* decided an issue that Plaintiff did not raise here.  (Tr. at 90-98)  More specifically, Plaintiff's counsel pointed to the part of *Simon* in which the Third Circuit defined the issue before it and stated that "[w]hat is before us here[] . . . is . . . whether interest generated from abandoned property constitutes a cognizable property right under the Fifth Amendment."  *Simon*, 301 F. App'x at 112 (emphasis omitted) (*cited in* Tr. at 90).  According to Plaintiff, while *Simon* was about "whether the state took the *interest* on cash that was held [and] whether that was a taking itself[,]" here "the taking that [Plaintiff has] alleged . . . is not the taking of *interest*[, but instead] the taking of *unclaimed property*" for which the State is "required to pay just compensation[.]"  (Tr. at 90-92 (emphasis added); *see also id.* at 93, 105-06)  This difference, according to Plaintiff, is critical to distinguishing *Simon*.

There are a number of problems with this argument.  But the most significant is that—as Plaintiff's counsel repeatedly acknowledged during the hearing—Plaintiff never actually made this argument in the relevant section of its answering brief.  (*Id.* at 98-99, 102-04)  Nowhere in Plaintiff's brief where *Simon* is discussed does Plaintiff mention this "interest vs. the unclaimed property itself" distinction that Plaintiff's counsel belatedly raised at the hearing.  (D.I. 24 at 16-20)  As the Court has already noted, *see supra* n. 12, arguments not made in briefing and raised for the first time at oral argument are deemed waived.  *See Fundamental Innovation Sys. Int'l LLC v. Lenovo (United States), Inc.*, Civil Action No. 20-551-RGA-CJB, 2022 WL 1046255, at *3 n.9 (D. Del. Apr. 7, 2022) (finding that a new argument presented at oral argument was waived, where it could have been presented in the briefing); *Horatio Washington Depot Techs. LLC v. Tolmar, Inc.*, Civil Action No. 17-1086-LPS, 2018 WL 5669168, at *7 n.4 (D. Del. Nov. 1, 2018) (same, citing cases), *report and recommendation adopted* 2019 WL 1276028 (D. Del.

Mar. 20, 2019).[19]  This requirement is not simply a formality.  Rather, it is meant to avoid the exact situation here—one where the Court and the opposing party are left blindsided by arguments raised for the first time at a hearing.  Such a rule helps ensure that judicial resources are not wasted, and that each side has a full and fair opportunity to develop the record and meaningfully respond to its opponent's arguments.  *See Tomasko v. Ira H. Weinstock, P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) (holding that arguments raised for the first time at oral argument in the District Court were waived, because concluding otherwise would "deprive one's opponent of any meaningful opportunity to respond").  So for this reason alone, the Court rejects Plaintiff's argument in this regard.

But even beyond that, Plaintiff never explained why the argument it was making here[20] provided a meaningful distinction from what was at issue in *Simon*.  *Simon*'s point is that a litigant does not have a cognizable property interest in abandoned property.  So whether the takings claim at issue is focused on the taking of that abandoned property itself or the taking of

---

[19]     Unfortunately, Plaintiff's counsel's presentation at the hearing was riddled with examples of arguments not made in the briefing.  At another point, for example, counsel raised an "argument that did not occur to me until . . . last night" as he "was preparing for the hearing today[,]" which had to do with a purported difference between the text of Article I, Section 8 of the Delaware Constitution and the Fifth Amendment.  (Tr. at 115-16)  That argument, too, has been waived.

[20]     As the Court noted earlier, *see supra* n. 8, at various points in Plaintiff's Complaint, Plaintiff *does* appear to suggest that the taking at issue is the taking of interest (among other benefits) due on the Unclaimed Property.  (D.I. 1 at 14 (Plaintiff, in his request for relief, asking for a declaration that "Defendants' *confiscation of interest*, dividends, accruals, earnings, investment returns, and other benefits earned on and from unclaimed or abandoned property under the [DUPL] . . . *are takings of property* within the meaning of the Fifth and Fourteenth Amendments . . . and Article I, § 8 of the Delaware Constitution for which the State is required to pay just compensation") (emphasis added))  Certainly, the taking of interest is what Defendants thought this case was about after reading the briefing.  (Tr. at 117)  In any event, for reasons stated above, the distinction Plaintiff's counsel drew during the hearing on the Motion is immaterial for purposes of resolving this matter.

interest owed on that abandoned property, either way there can be no viable takings claim.  That is because the property (and any interest or other just compensation that might have been owed thereon) has been *abandoned*.  (D.I. 26 at 1, 6; Tr. at 81-82, 119)

For the reasons discussed above, Plaintiff's Complaint is also dismissed in the alternative for failure to state a claim.

**III.    CONCLUSION**

For the reasons set forth in this Memorandum Opinion, the Court GRANTS Defendants' Motion.  Plaintiff did not seek to amend its Complaint in lieu of dismissal, and the Court has not been provided with an example as to how amendment would be anything other than a futile exercise.  So, the Court further rules that the Complaint be dismissed WITH PREJUDICE.

An appropriate Order will issue.